MARY CARPER, FORMERLY MARY ROKUS, APPELLANT, V. WALTER ROKUS, APPELLEE.

230 N. W. 2d 468

Filed June 12, 1975.  No. 39800.

David A. Jacobson and Vincent Valentino, for appellant.

Paul E. Watts and Gerald E. Moran, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, Mc-COWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

This is an appeal from an order of the District Court for Sarpy County, Nebraska, changing custody of the three small sons of the parties from the appellant mother to the appellee father. We affirm. The appellant here argues: (1) The best interests of the children require that they remain with her and the evidence is insufficient to show such a change of circumstances as would justify the change of custody. (2) The court erred in refusing to receive evidence of the father's conduct with relation to the children occurring previous to the default divorce and award of custody to the mother in May of 1971.

The parties were married in March 1963 and divorced on May 7, 1971. At that time the custody of Richard, born September 2, 1964; Larry, born September 15, 1965; and David, born December 1, 1968, was awarded to the appellant wife. Divorce was by default and the court made a finding of fitness on the part of the mother, but made no finding in this respect with reference to the father. The latter regularly exercised his rights of visitation, paid the child support ordered by the court, and on occasion made additional payments. On February 14, 1974, the appellant married Rick Carper, age 21 and 7 years her junior. Previous to the marriage the two lived in the appellant's home with her children for a period of about 2 weeks. Shortly after the marriage, she, her husband, and the three boys moved to Arkansas. The appellant did not obtain the permission of the court to move the children from the jurisdiction. In Arkansas they lived for a time with the husband's parents and later in a rented home. On June 30, 1974, she, with her husband and the boys, returned to Omaha, having shortly before determined to take a "belated honeymoon." Appellant left the children (and $80 for support) with a friend, who herself had six children aged 15 to 6. The

friend was at the time attending a business school and would be absent from the home from 9 a.m. to 2 p.m. During that time all the children would be left in charge of the friend's two oldest daughters. On July 1, 1974, appellant left with her husband for Colorado. They contemplated a "hitch-hiking" honeymoon with backpacks and tent and were so equipped, but shortly after starting, they apparently took bus transportation.

On July 3, 1974, or thereabouts, the babysitter friend, whose support came from aid to dependent children, received notice terminating her residential lease for nonpayment of rent. The friend then called and requested the appellee father to come get his children, which he immediately did. Appellant was apparently informed about this turn of events that same day when she called the friend to make inquiry concerning the children. The appellant completed the planned 2-week honeymoon trip and then returned to Nebraska. This custody action commenced by the father followed.

The appellant's husband remained in Pueblo, Colorado, where he still was at the time of trial. The appellant testified at one point in the course of trial that she was separated from her husband, but earlier she testified that when he called her she would go to him. Appellant was unemployed up until the last day of trial. She testified that she had obtained employment as a sales clerk which would have begun that day except for the trial.

There is evidence in the record which calls into question the stability of a household of which Rick Carper would be the head.

The 35-year-old appellee father, who has not remarried, is a receiving clerk for Western Electric and has been so employed for 6½ years. His income is adequate to support himself and the boys. After taking custody of the boys on July 3, 1974, he moved from his efficiency apartment to the home of his parents. If he is awarded custody, his mother, age 56, will quit her employment

in order to cook and otherwise care for the boys who have been with their father and his parents since July 3, 1974. The father testified at trial, affording to the appellant full opportunity to explore the question of the father's present fitness. The court denied to the appellant the opportunity to explore events preceding the entry of the decree of divorce and the original award of custody.

"A decree fixing custody of minor children will not be modified unless there has been a change in circumstances indicating that the person having custody is unfit for that purpose or that the best interests of the children require such action. . . . The discretion of the trial court with respect to changing the custody of minor children is subject to review, but the determination of the court will not ordinarily be disturbed unless there is a clear abuse of discretion or it is clearly against the weight of the evidence." Bennett v. Bennett, 189 Neb. 654, 204 N. W. 2d 379.

The evidence we have recited justifies the trial court and this court in finding that the remarriage of the mother to Rick Carper, her rather irresponsible conduct thereafter, and the instability which the remarriage introduces into the lives of the boys constituted such a change of circumstances that the best interests of the boys are served by the change of custody to the father with reasonable rights of visitation afforded the mother.

The appellant asserts that the court erred in not receiving evidence relative to the relationship of the father and the boys previous to the divorce. The evidence proffered but refused was to the effect that the boys, or some of them, were part of a "big brother" program while their father was still married to their mother; that program apparently is one where paternal companionship is afforded boys without a father at home. Beyond this, the offer was further totally lacking in specificity as to details of the relationship between the father and the boys.

The appellant urges that we adopt the following rule: In cases involving the modification of custody provisions of a default divorce decree where no evidence was heard by the divorce court regarding the fitness for custody of the defaulting party and where no specific finding of the fitness of the defaulting party was made by the divorce court, the court must consider all facts and circumstances existing prior to and at the time of judgment in making a subsequent determination of custody. She cites and relies upon Warren v. Warren (Iowa), 191 N. W. 2d 659; Annotation, 9 A. L. R. 2d 623; and Bliffert v. Bliffert, 14 Wis. 2d 316, 111 N. W. 2d 188. In the latter case the court said: "The rule of res judicata previously recognized by this court in custody matters does not apply where the fitness of a parent has not been determined." She further contends that this court has to some extent modified the strict application of the principle of res judicata in general custody cases and cites Bartlett v. Bartlett, 193 Neb. 76, 225 N. W. 2d 413; and Fisher v. Fisher, 185 Neb. 469, 176 N. W. 2d 667. The rule ordinarily applied by the court is: An application for modification of a divorce decree with respect to the care, custody, and maintenance of minor children must be founded upon new facts and circumstances which have arisen since the entry of the decree. Adamson v. Adamson, 190 Neb. 716, 211 N. W. 2d 895.

It is difficult to lay down any precise rules as to the extent that the strict application of the principles of res judicata is to be relaxed in change of custody cases involving children. This is because there are contending policy considerations. A primary consideration is always the welfare of the child. The promotion of that welfare may require change of custody. On the other hand, opening up to reexamination occurrences previous to the award sought to be changed tends to promote undesirable litigation and to disrupt the stability of the child's environment. In view of the lack of specificity of the offer of proof, we do not believe the trial court

erred in declining to depart in this case from the usual rule.

AFFIRMED.