ADOLPH KUHN, JR., APPELLANT, V. LINDA KUHN, APPELLEE.

282 N. W. 2d 43

Filed August 14, 1979.   No. 42291.

Donald R. Hays, for appellant.

Robert G. Hays, for appellee.

Heard before BOSLAUGH, CLINTON, and WHITE, JJ., and HAMILTON and HENDRIX, District Judges.

Hamilton, District Judge.

This appeal arises from an action for modification of a decree of dissolution brought by the appellant, Adolph Kuhn Jr., requesting permanent custody of the minor child of the parties, and the cross-application of the appellee, Linda Kuhn, seeking permission of the court to remove the minor child of the parties to the state of California.

The court following a hearing on June 29, 1978, denied the appellant's request for modification of the decree and granted appellee's request for permission to remove the minor child to the state of California.

The record reflects that on the 31st of January 1977, the parties were before the court on an uncontested dissolution hearing. The parties at that time agreed that legal custody of the minor child, Dean Kuhn, was to be jointly held by the parties with physical custody in the mother, Linda. The agreement was approved by the court and incorporated in the decree of dissolution of February 25, 1977.

On May 3, 1977, Linda filed an application for permission to remove the child to Modesto, California. An extensive hearing was held on August 22, 1977, before Judge Herbert Ronin on the amended application to remove the child to Modesto, California. No ruling was entered as a result of this hearing because Linda moved to Palm Desert, California, while the case was under submission to the court, leaving the child with appellant. There is a dispute as to the circumstances surrounding the changing of physical custody at this time and the changing of physical custody back to the mother over the Christmas holidays of December 1977. The application for removal pending before Judge Ronin was dismissed at Linda's request. Ultimately the parties filed their respective applications which are now the subject matter of this appeal.

The appellant assigns error of the District Court in:

(1) Denying his request for permanent custody, (2) granting the mother's request for permission to remove the minor child to California, and (3) not considering evidence of predivorce activities of the parties which was unknown to the trial court at the time the original decree was entered.

In support of his application for permanent custody of the minor child, Adolph Kuhn, Jr., testified he has been employed by Cable Television for 13 years and earns a salary of $20,000 per year. He has not remarried and lives in what was the family home. Dean lived with him during June and July of 1977, during his summer visitation period, and continued to live with him until December of 1977, after Linda phoned him on or about August 27, 1977, informing him she was leaving for California and leaving Dean in his possession. He testified he did not hire anyone to supervise the boy, that a friend of Dean's, who was approximately 2 years older than Dean, was with him after school, and that Dean could reach him at work when necessary.

Appellant further testified that when Linda called before Christmas and wanted Dean during the holidays, he gave approval conditioned on her making the reservations. Linda paid for the flight to California and appellant paid for the return flight ticket for an arrival date of January 3, 1978, at which time he went to the airport and discovered Dean was not on the plane.

During the course of appellant's testimony he attempted to testify, over objection, with regard to predivorce activities of Linda. The objection was sustained by the court. The appellant's offer of proof indicated he intended to prove that while separated and before the dissolution Linda had committed acts of misconduct that would have an effect upon the court's determination as to her fitness to have care, custody, and control of the minor child.

The record reflects the minor child was called as a

witness by Linda. He testified he was 12 years old, in the seventh grade in school, and currently living with his mother in Palm Desert, California. He liked living in California and felt more secure there than with his father, because he had been left at home a lot by his father and felt afraid of the neighborhood. Dean indicated he was doing better in school in California and felt more secure with his mother.

The boy's testimony further showed that he visited with many of his relatives in California, that one of his aunts supervises him when necessary, and that his mother's parents have an 80-acre ranch in California on which he plans to spend some time. The record further reflects that appellant's parents live in California and have visited Dean on three or four occasions. Dean testified he would prefer to stay with his mother in the winter and his father in the summer.

Linda testified that she originally intended to move to Modesto, California, with Dean but changed her mind. The majority of Dean's relatives live in California and he has regular visits with most of the relatives. She moved to Palm Desert, California, where Dean was born and lived for 9 years before moving to Lincoln, Nebraska. Linda testified she has relatives in Palm Desert who assist her in watching Dean. She had worked in California as a cashier, secretary, and waitress. She expected to work as a billing clerk for an insurance company upon her return to California.

When Dean first went to California he was frightened, nervous, upset, and afraid to be alone. His school work suffered because of a lack of concentration caused by worry about the custody problem he was involved in. Linda testified she took Dean to a psychiatrist for evaluation and treatment of his problems, that he is now well adjusted, and he does not require more visits to the doctor or his staff.

The deposition of Doctor William Doust, introduced into evidence on behalf of Linda, verified he is a practicing psychiatrist specializing in child psychiatry. He examined Dean as a patient three times in February of 1978 for a diagnostic evaluation to determine his degree of emotional disturbance and the cause thereof.

The doctor testified that Dean is a very bright youngster who is very insightful. The interviews with Dean indicated he wanted to live with his mother during school periods and live with his father during vacation periods. The child indicated great love for both parents but felt caught between them because of the custody question. The doctor couldn't see anything undesirable about Dean living with his mother on a permanent basis and visiting his father during vacation periods. The doctor felt this arrangement was a reasonable one, but was unable and unwilling to give an opinion as to what custody arrangement was in the "best interests" of Dean since he interviewed only Dean and his mother. He felt the child needed some stability in his life from a responsible parent.

An application for modification of a dissolution decree with respect to the care, custody, and control of minor children must ordinarily be founded upon new facts and circumstances which have arisen since the entry of the decree. Adamson v. Adamson, 190 Neb. 716, 211 N. W. 2d 895; Bartlett v. Bartlett, 193 Neb. 76, 225 N. W. 2d 413. The paramount consideration for the court in a custody hearing is the welfare of the children based upon their best interests, general health, welfare, and social behavior. Kockrow v. Kockrow, 191 Neb. 657, 217 N. W. 2d 89; Bauer v. Bauer, 184 Neb. 777, 172 N. W. 2d 231.

The discretion of the trial court with respect to changing the custody of minor children of a broken marriage will not ordinarily be disturbed unless there is a clear abuse of judicial discretion or it is

clearly against the weight of the evidence. Fisher v. Fisher, 185 Neb. 469, 176 N. W. 2d 667; Carper v. Rokus, 194 Neb. 113, 230 N. W. 2d 468.

This court in the past has permitted evidence of facts affecting the custody and best interests of children, existing at the time of the decree and not called to the attention of the court at the time the decree was entered, to be used in evidence at a subsequent modification of custody hearing. Fisher v. Fisher, *supra*; Bartlett v. Bartlett, *supra*; and most recently, Cline v. Cline, 200 Neb. 619, 264 N. W. 2d 680. These cases involved situations where either the facts were unknown at time of trial, custody was in the court, or the decree was obtained by fraud or misrepresentation.

This court approved the trial court's refusal to permit evidence of predissolution conduct in Youngberg v. Youngberg, 193 Neb. 394, 227 N. W. 2d 396, where the activities were known to the parties at the time of the decree, and again in Carper v. Rokus, 194 Neb. 113, 230 N. W. 2d 468, where the court pointed out that the principles of res judicata are to be relaxed to some degree in custody cases where the welfare of the child is concerned. The court will be cautious, and where the offer of proof lacks specificity the decision of the trial court in rejecting evidence will not be disturbed.

In the case before us the parties were fully aware of all the facts concerning fitness at the time of the original decree. The custody agreement was presented to the court and approved with both parties present and before the court. The appellant had full knowledge of all the facts and elected not to advise the court nor consider the facts to be of such importance that they would or should have an effect on the court's finding of fitness to have custody and possession of the minor child. There is no evidence of any fraud, misrepresentation, or duress that could have caused this silence.

It is discretionary with the trial court whether to admit evidence of facts, existing at the time of the decree and which affect the custody and best interests of children, that were not called to the attention of the trial court at the time of the decree, and this discretion will not be disturbed on appeal unless there is clearly an abuse of discretion.

The trial court here had the benefit of an offer of proof that clearly detailed the proposed evidence and it determined, as the appellant did at the time of the decree, that the proposed evidence under the circumstances did not effect a substantial right of the parties or the best interests of Dean Kuhn.

In viewing the evidence on the whole it cannot be said the evidence does not support the findings of the trial court that there was a change in circumstances subsequent to the decree to warrant a change of custody. The evidence is most impressive that the child in question was experiencing emotional problems caused by the custodial uncertainties. The expert opinion confirms that the present relationship was an acceptable arrangement of custodial rights and in effect had removed some of the emotional problems facing the child. The desires of the child, now 13 years of age, showing his preference for the present custodial arrangement, should be taken into account although they are not binding on the court.

There is abundant evidence to show a change of circumstances and support the findings and judgment of the trial court. The judgment of the District Court is affirmed.

AFFIRMED.