IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

THOMPSON V. THOMPSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

NICOLE K. THOMPSON, NOW KNOWN AS
NICOLE K. AUSTIN, APPELLEE,

V.

JUSTIN D. THOMPSON, APPELLANT.

Filed May 26, 2020.    No. A-19-1011.

Appeal from the District Court for Lincoln County: MICHAEL E. PICCOLO, Judge. Affirmed.

Andrew J. Van Velson, of Van Velson Law Office, P.C., L.L.O., for appellant.

Kim M. Seacrest, of Seacrest Law Office, for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Justin D. Thompson appeals from the order of the district court for Lincoln County which denied his complaint to modify custody of his daughter, K.T. He further assigns error to the district court's recalculation of child support and its failure to award him attorney fees. We find no abuse of discretion in the district court's ultimate determination that no material change of circumstance had occurred justifying a modification of its prior custody order. We further find no abuse of discretion in the district court's child support calculation or its decision to deny Justin's request for attorney fees. As such, we affirm the order of the district court.

## II. BACKGROUND

### 1. PREVIOUS PROCEEDINGS

This is the third appearance of this case before this court. Each of the prior appeals addressed the issue of Justin's parenting time with the parties' minor child, K.T. Justin originally appealed from the entry of the decree of dissolution. See *Thompson v. Thompson*, 24 Neb. App. 349, 887 N.W.2d 52 (2016) (*Thompson I*). On appeal, we reversed the award of parenting time granted to Justin and remanded that issue to the district court for formulation of a revised parenting plan that adequately took into account the days that Justin was available to parent, given his unusual work schedule as a firefighter. Following remand, further trial was held and the district court entered its order including a modified parenting plan on August 1, 2017. The district court expressly declined to consider Justin's request for joint physical custody, reasoning that the issue of custody was not included in this court's remand.

Justin appealed the modified order to this court, contending that the order did not provide adequate parenting time and that an award of joint physical custody was justified. In a memorandum web opinion, we affirmed the district court's modified parenting plan. See *Thompson v. Thompson*, No. A-17-855, 2018 WL 2946123 (Neb. App. June 12, 2018) (selected for posting to court website) (*Thompson II*). We declined to address Justin's contention that joint physical custody should have been given. In so doing we agreed with the district court's determination that the issue of custody was beyond the scope of our previous remand. Justin's petition for further review was subsequently denied on August 9, 2018.

### 2. CURRENT PROCEEDINGS

In January 2019, Justin filed a complaint for modification seeking full custody of K.T. He further sought a review of the prior child support calculation and asked to be credited with overpayments he had made due to the original calculation's failure to take into account his payment of health care premiums. Renumbered and restated, Justin's complaint for modification specifically alleged the following material changes of circumstance: (1) both parties had remarried; (2) a daughter had been born to Justin and his wife, Stephani, who was also pregnant with their second child; (3) Nicole was unable to provide a stable home due to frequent changes of jobs; (4) since the decree of dissolution, Justin's mental health had substantially improved and could no longer be considered an impediment to his parenting ability; and (5) the child support calculation does not accurately reflect Nicole's income nor Justin's payment of health insurance premiums. Appellee, Nicole K. Thompson, now known as Nicole K. Austin, denied the allegations in Justin's complaint to modify and filed a counterclaim for an upward modification of child support.

### 3. TRIAL

On June 20, 2019, trial was held on Justin's complaint for modification and Nicole's counterclaim. A contempt motion filed by Justin was tried at the same time, but no appeal has been taken from the court's findings thereon. Before recounting the evidence adduced at trial, we note that at the time of trial, under the existing parenting plan, Justin gets two 4-day periods of visitation per month during the school year. He designates the dates that his visitation takes place in advance,

so as to allow his parenting time to take place during time periods he is not working. In the summer, he receives 6 weeks of parenting time on an alternating week schedule.

At trial, Justin testified that he wanted to spend as much time as possible with K.T. He described the activities they participate in together and the time K.T. spends with his extended family. He stated he has a good relationship with K.T. and spends as much time as possible with her. However, his actual time spent with K.T. can be limited on days when she is in school. That being said Justin did acknowledge that he schedules his parenting time in a manner to maximize contact. Justin has asked for extra time but says Nicole rarely grants it to him. He stated that Nicole acted as a gatekeeper, unnecessarily preventing K.T. from attending events such as a ceremony honoring him as firefighter of the year, and not timely informing him of events involving K.T., such as her planned baptism.

Justin testified that his own mental stability and outlook had improved since the decree was entered. He stated he has worked on himself with the aid of his pastor, counselor, and wife. He has become involved in leading men's groups in a program called the "Crucible Project." He testified that the past concerns his mental health counselor had about him no longer exist and that the suicidal thoughts he had prior to the original dissolution trial were no longer a cause for concern. He stated that the anxiety he does presently experience relates to the ongoing litigation and conflict with Nicole. However, this anxiety is justified, in his opinion, if it means K.T. is looked out for. He stated that he fights for his daughter because he does not want K.T. to think he gave up on her.

Since the entry of the decree, Justin has married Stephani and their daughter E.T. was born in July 2018. A second child was expected in August 2019. Justin contended that more than the current parenting time was needed for K.T. to establish a good relationship with her siblings. Justin testified that he did believe his new marriage and family constituted a material change of circumstance since he had no desire to remarry at the time the decree was entered. He stated that he and Stephani have a stable home and that he has maintained his employment as a fireman for 12 years.

Justin believes that Nicole and he have gained a greater ability to coparent, despite the ongoing litigation. He testified that they both go to activities such as parent-teacher conferences, soccer games, and dance recitals. They attend these events without outbursts or threatening behavior. While they rarely agree, Justin nonetheless believes that they communicate "well enough" and that texting is an effective form of communication. However, when asked if an end to the ongoing litigation would help the parties better focus on parenting and would benefit K.T., Justin stated that he would "love to stop," but cannot since Nicole will not do the right thing by allowing him to be in K.T.'s life as much as possible.

Justin acknowledged that K.T. is healthy and active. While she has more stress than the average 8-year-old, he stated that she is genuinely cared for. While stating concern with regard to one event where he believed that Nicole's husband, Kyle, raised his voice toward K.T., he testified that he had no concerns for abuse or neglect in Nicole's home. He opined that K.T. is doing well in school academically and socially, and does not have disciplinary issues.

Regarding child support, Justin presented his W-2 tax statements from 2016 through 2018, some proposed child support calculations, and a recent paystub. He testified that although he had provided health insurance for K.T., he had never been given credit for it. He acknowledged that

his proposed calculations also did not include an entry for his cost of health insurance, but asked the court to utilize his current paystub to calculate the credit. He acknowledged that his costs for health insurance had increased since the entry of the decree. The proposed calculations did take into account his daughter born during his current marriage.

Nicole testified that while she has sole custody of K.T. and is not required to provide Justin extra parenting time, she has allowed him extra time. She has followed the prior court orders as to parenting time. She acknowledged not immediately informing Justin of certain upcoming events such as K.T.'s plan to be baptized, but stated the plan was to inform him once a date was set. On many occasions when Justin has asked for additional time, Nicole has asked K.T. if she wishes to go. If K.T. does not want to go, Nicole will refuse the request, but does not inform Justin that K.T. was asked. According to Nicole, K.T. does not want Justin to know of her decision. Nicole noted that Justin has withheld information regarding activities he has enrolled K.T. in, such as the times and dates of soccer games and talent shows. She also noted that Justin does not allow her to have telephone contact with K.T. during his parenting time.

Contrary to Justin, Nicole testified that at the time the parties were divorced, she did believe that it was likely the parties would remarry. She noted she was in her late twenties at the time the decree was entered. She also believed K.T. had adequate time to spend with E.T. under the current parenting plan. She noted that Justin has his choice of what 8 days per month K.T. would be in his possession and has the choice of when the alternating week summer schedule begins. She further noted that she enjoys her time with K.T. and also wants to support K.T.'s relationship with Kyle's daughter when K.T. is in their home during his parenting time.

Nicole denied any instability in her employment. She noted that none of her changes of employment since the entry of the decree were due to her performance. At the time of the decree, she worked for an urgent care clinic. She then accepted employment with a physician's group. That group was then acquired by the hospital. While employed there, her responsibilities expanded from managing one outpatient clinic to overseeing nine clinics. Due to the stress associated with this work, she applied for and was hired at Wells Fargo Advisors. She testified that her income was unchanged in this move. She noted that since that move, she had interviewed for but did not obtain a job at a different bank. She was recruited for that position and asked to apply. Nicole testified that she works normal Monday to Friday daytime hours and is satisfied with her current work.

Nicole testified that both she and Justin have very good relationships with K.T. She testified that K.T. is in excellent health and is well adjusted. K.T. is a leader in school and is generally happy and well behaved. She stated that there is no evidence of abuse or neglect in either residence. She did say that K.T. experiences stress and anxiety as a result of the ongoing litigation instigated by Justin. K.T. has difficulty with schedule changes and continues to feel as though she is stuck in the middle.

Nicole's pay stubs and 2016 through 2018 tax returns were received into evidence. She testified that she did have a hobby business for a short period of time, but no longer operates it. She also submitted proposed child support calculations. On appeal Justin does not contend that business income for Nicole should be included in a child support calculation.

Two counselors were called as witnesses. Justin called Monica Kramer who, prior to the dissolution, provided counseling to both Justin and Nicole. She has continued to provide services to Justin on an intermittent basis since the divorce. Kramer described Justin as self-centered and aggressive when first seen. At that time she diagnosed him as having intermittent explosive disorder. However, over the years she has noticed changes. His diagnosis progressed to persistent depressive disorder and now to generalized anxiety. She testified that some of his anxiety is caused by medical issues associated with E.T. since her birth, but most is caused by the ongoing litigation associated with K.T. She testified that he has gradually progressed away from his former anger and hostility and shows no more signs of suicidal ideation. She believes he is doing a good job of seeking help, be it through her services or his pastor. She believed his participation in Christian focused men's groups had been helpful and that he has found ways to deal with his anger in a healthy way. On cross-examination, Kramer testified that she was "not prepared" to answer whether Justin was creating his own anxiety by perpetuating the litigation in this case.

Nicole called Kris Steinbeck, a child and family therapist. Steinbeck has worked with K.T. since November 2017. Following her sessions with K.T. she meets with Nicole and Justin separately. While she would prefer to engage the family together, she testified that was not possible in this case. Her goal in the therapy is to reduce K.T.'s stress and teach her coping skills. She testified that K.T. appears to enjoy sessions and has benefitted. K.T. is better able to process, regulate, and articulate her thoughts and feelings. She opined that the stress of the parents from the constant litigation trickled down to K.T. and was not beneficial to anyone. On cross-examination, Steinbeck testified that involvement with both parents is needed, however in this case, when she tried having the parties in a session together, Justin dominated the conversation causing Nicole to shut down. She could not achieve a fair balance of self-disclosure and sharing with both parties present. This stress was unhealthy for both mother and father.

### 4. DISTRICT COURT'S ORDERS

On August 14, 2019, the district court entered an extensive order addressing the complaint to modify and the counterclaim. After recounting the extensive history of litigation which had occurred to date, the court addressed the issues then pending before the court. As to Justin's request for custody, the court found that only the four changes of circumstance alleged in the complaint to modify would be considered. The court further found that it would only consider changes occurring after the July 27, 2017, trial following the initial remand of the case from this court. The court noted that the issue of joint custody was raised by Justin in that hearing and was denied by the court. As a result, the court stated it would not consider changes of circumstance that related to events predating the July 2017 hearing and going back to the entry of the decree on May 27, 2015. The court ultimately found that none of the four alleged circumstances pled by Justin constituted a material change.

As to each of the parties' remarriage, the court found that remarriage alone does not necessarily present an occurrence of something, that had it been known at the time of dissolution, would have persuaded the court to decree differently. The court noted that no credible evidence was presented of events arising from Nicole's marriage or related to K.T.'s stepfather that could be labeled a material change of circumstance. The court found that it was foreseeable not only that

the parties (approximately 27 years old at the time of the divorce) would remarry, but that they would have additional children. The court found that while it is desirable for K.T. to have a quality relationship with her half sister, there is no reason to believe that had she been born by the time of the original decree, the court would have made a different order as to custody.

In addressing Nicole's changes of employment, the court "for the sake of argument" assessed all of the evidence of changes dating back to the May 2015 decree. The court noted that one of the "changes" was the result of the purchase of one of her employers by another. The court further noted that when Nicole shifted her career from health care to financial services, she did so in search of a better work schedule, better pay, and less stress. She was never unemployed and was able to enhance her pay while working daytime hours Monday through Friday. The court found that K.T. had not suffered economically, socially, or physically due to Nicole's employment changes. Thus, no material change of circumstance was found.

Finally, the court noted that while Justin's improved mental health was "laudable," it was not sufficiently impactful as to legally constitute a material change of circumstance that would support a modification of the custody arrangement. The court went on to summarize and briefly address a list of concerns raised by Justin at trial. These concerns generally fell into the category of Nicole acting as a gatekeeper, not timely informing him of events and activities, Nicole not allowing additional parenting time, and not giving advance notice of doctor and dentist appointments. The court noted these issues were outside the pleadings. Even if they were considered, the court noted that many of the obligations Justin was attempting to place on Nicole were not mandated by the decree. While the court encouraged the parties to at some point remove "the gloves of litigation," it found that there was no material change of circumstance proven nor any showing that the best interests of the child required a change of custody.

The court did find that Justin's child support obligation should be modified. The court adopted one of Justin's proposed calculations. Pursuant to that calculation, the birth of E.T. to Justin and Stephani was taken into account as was the updated evidence as to the parties' income through their employment. The court declined to give Justin a credit for back health care premiums he had paid, but said it had deducted them for purposes of the new calculation. Under the court's calculation, Justin's child support obligation decreased from $611 to $541 per month.

### 5. MOTION TO ALTER OR AMEND

Justin's motion to alter or amend alleged that the court had failed to give Justin a credit for health insurance paid. It further alleged that a second child had been born to Justin and Stephani, thus requiring the court to recalculate child support taking into account that child. Justin also requested that the court reanalyze the custody issue by considering the entirety of the period from the date of the decree until the present. At the hearing on the motion Justin offered two additional proposed child support calculations and an email from a person named Deborah Murdock which purports to break out health insurance costs for an individual versus family coverage. The calculations were received as demonstrative evidence. The email was received as substantive evidence for purposes of health insurance over the objection of Nicole.

The court refused to alter the child support calculation based on the birth of Justin's second child with Stephani. The court reasoned that as of the date of trial, the child was not yet born.

Therefore, the facts available at that time did not include a second child. As to the health insurance deduction, the court found that no evidence was adduced at the time of trial as to the actual cost of health insurance. The court further found that it could not consider the email from Murdock since the evidentiary phase of the case was closed at the end of trial. Consequently, no further change was made to Justin's child support obligation.

As to the relevant time period for the court to consider for purposes of a change of custody, the court noted that both the district court and this court were presented the issue of joint custody in the 2017 proceedings and rejected Justin's request. As such, the court found that it could only look back to the July 27 order for purposes of determining whether a material change of circumstance had occurred.

## III. ASSIGNMENTS OF ERROR

On appeal, Justin assigns the district court erred in (1) finding that the operative date for determining whether a material change of circumstance existed for purposes of a change in custody was July 27, 2017, rather than May 27, 2015; (2) failing to find that a material change of circumstance occurred due to the remarriage of the parties, his subsequently born children, and his improved mental health status; (3) failing to consider or give weight to Nicole's "gatekeeping" or actions exhibiting parental alienation in determining whether to modify custody; (4) failing to deduct Justin's cost of health insurance for the minor child in its child support calculation and in failing to retroactively apply it, despite finding that Justin was entitled to a deduction; and (5) failing to award him attorney fees. We note that Justin does not assign error to the court's failure to find that Nicole's changes of employment constitute a material change of circumstance.

## IV. STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *VanSkiver v. VanSkiver*, 303 Neb. 664, 930 N.W.2d 569 (2019).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason and evidence. A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, we will affirm the trial court's decision absent an abuse of discretion. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013).

Whether a child support order should be retroactive is entrusted to the discretion of the trial court, and an appellate court will affirm its decision absent an abuse of discretion. *Johnson v. Johnson*, 290 Neb. 838, 862 N.W.2d 740 (2015).

In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the

absence of an abuse of discretion. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014); *Pearrow v. Pearrow*, 27 Neb. App. 209, 928 N.W.2d 430 (2019).

## V. ANALYSIS

### 1. CUSTODY

Before a modification of a child custody order may be entered, two steps must be taken by the party seeking modification. First, the party seeking modification must show a material change of circumstances occurring after the entry of the previous custody order and affecting the best interests of the child. *Eric H. v. Ashley H.*, 302 Neb. 786, 925 N.W.2d 81 (2019). Second, the party seeking modification must prove that changing the child's custody is in the child's best interests. *Id.* See, also, *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Heistand v. Heistand*, 267 Neb. 300, 673 N.W.2d 541 (2004). The issue in this case is whether Justin demonstrated a material change of circumstance. The district court did not advance beyond this inquiry in determining that no change of custody was merited by the evidence.

### (a) When Was Previous Custody Order Entered?

The district court found that the July 27, 2017, order constituted the previous custody order making it the operative order from which a determination of a material change of circumstance should be made. Justin contends that based on the language of that order and our opinion in *Thompson II*, the 2017 order did not address custody. As a result, Justin contends that the court should have looked to the original decree as being the previous custody order from which to determine that a material change of circumstance had occurred. We agree with Justin's argument, but ultimately find that the court did not abuse its discretion in finding no material change of circumstance had occurred, even when looking back to the May 27, 2015, decree. We note that the decree and the July 27, 2017, order were entered by a different district court judge than the judge currently presiding over the case.

In *Thompson I*, Justin did not assign error to the original decree's grant of custody to Nicole. The issues on appeal primarily surrounded the award of parenting time. We reversed the award of parenting time and remanded the case to the district court to formulate a parenting plan which took into consideration Justin's available parenting days. Upon remand, the district court refused to consider Justin's request for joint custody, finding that the scope of the remand required only a reassessment of parenting time. On appeal, Justin argued that the court had erred in failing to award him joint custody. In *Thompson II*, we acknowledged Justin's argument but found that the district court was correct in not reconsidering its original custody order. We noted that nowhere in our mandate did we instruct the court to reconsider custody and found that the district court was correct not to do so. So, while Justin invited both the district court and this court to reopen the custody issue, his efforts were unsuccessful. The merits of whether custody should change were never addressed. As a result, we cannot find that the July 27, 2017, order of the district court constituted a custody order for purposes of determining whether a material change of circumstance exists. The only prior order determining custody was the original decree of dissolution.

The district court's error does not lead us to conclude that the case should be remanded for further analysis however. We note that both of the parties offered testimony and exhibits relating to events occurring prior to 2017. No objections were made and the evidence came in during trial. As a result, our record has not been diminished due to objections being sustained due to the time frame of the evidence. Moreover, we note that in several portions of the district court's order, the court did cite to events occurring prior to the July 2017 order. Many of these citations were part of an "even if" analysis, but it is clear that the district court did to some extent consider this evidence. In our analysis, we have considered all of the evidence adduced, including events occurring prior to July 2017.

## (b) Remarriage and Later Born Children

Justin alleges that both parties' new marriages and the birth of his children all constitute material changes of circumstance. While we have found examples of cases wherein remarriage of a party has been found to constitute a material change of circumstance when combined with other evidence, we have found no cases (and none have been cited by Justin) wherein remarriage and later born children, without more, was found to be sufficient to state such a claim. For example, in *Carper v. Rokus*, 194 Neb. 113, 230 N.W.2d 468 (1975), the Nebraska Supreme Court affirmed the finding of the district court that the irresponsible conduct of a mother following her remarriage had introduced instability into the lives of her sons, thus supporting a change of custody. In *State on behalf of Savannah E. & Catilyn E. v. Kyle E.*, 21 Neb. App. 409, 838 N.W.2d 351 (2013), we found that the remarriage (and subsequent separation and divorce proceedings) involving the mother coupled with her inability to maintain employment, several criminal convictions, and the children's poor performance in school combined to constitute a material change of circumstances. Here, outside of one incident wherein Kyle possibly raised his voice, there is no evidence that in any way indicates that Nicole's marriage has had a detrimental effect on K.T. There is also no evidence that Justin's marriage has produced any uncontemplated change since the date the decree was entered.

The bottom line on this issue is that whether or not Justin subjectively contemplated remarriage or additional children at the time of his divorce, it cannot be said that either of these developments constitute circumstances that if known to the court at the time the decree was entered, would have caused the court to decree differently. We agree with the district court that neither of these developments constitutes a material change of circumstance.

## (c) Improved Mental Health

Justin argues that his improved mental health constitutes a material change of circumstance. Justin's counselor, Kramer, testified to Justin's improved mental health, noting that his diagnosis had progressed from intermittent explosive disorder to depression and more recently to generalized anxiety. Justin further testified to his continuation of counseling and involvement in men's groups and pastoral care as a benefit. We note that the district court's order on this issue includes a recounting of Justin's mental health history predating the July 2017 order. The court found however that Justin's "notable improvement" in mental health was not "sufficiently impactful as to legally constitute a material change of circumstances that would or could support"

a decision to modify custody. We find no abuse of discretion in the court's ultimate finding. While we agree that Justin's overall mental condition has improved, we cannot find that this improvement, standing alone, constitutes a material change of circumstance. We further note that even if a material change was found, there was no evidence adduced that would indicate that the child's best interests would be served by a change of custody. Justin provided little if any evidence that K.T. was abused or neglected in Nicole's home. He took little issue with Nicole's decision making except as to her denials of additional parenting time. Both parties testified that K.T. is a generally happy and healthy child who performs well in school and is involved in numerous extra-curricular activities. The anxiety she does experience appears traceable to the ongoing conflict and litigation between her parents. Justin's improved mental health does not support a finding that custody should be changed.

(d) Unpled Bases for Modification

Justin claims that the court erred by not considering evidence of gatekeeping and parental alienation by Nicole as a basis for finding that the best interests of K.T. would be served by changing custody. He acknowledges that he neither alleged these issues to constitute a material change of circumstance nor did he otherwise refer to them in his complaint to modify. Nonetheless, he argues that "anything concerning a child's best interests is at issue when a complaint for modification is filed." Brief for appellant at 18. We disagree.

Our Supreme Court addressed this issue at length in *Eric H. v. Ashley H.*, 302 Neb. 786, 925 N.W.2d 81 (2019). In that case, the father argued that the trial court erroneously focused on whether his daughter had actually been sexually abused by her stepfather, Matthew, rather than considering the possibility that the allegations against Matthew, whether or not true, constituted a material change of circumstances. He argued that the stress caused due to the allegations should have been considered. The Supreme Court reasoned as follows:

Neb. Rev. Stat. § 42-364(6) (Reissue 2016) provides that "[m]odification proceedings relating to . . . custody . . . shall be commenced by filing a complaint to modify. . . . Service of process and other procedure shall comply with the requirements for a dissolution action." In certain respects, these statutes specify special pleading requirements. See, e.g., Neb. Rev. Stat. § 42-353 (Reissue 2016). But otherwise, the ordinary rules of pleading apply to proceedings to modify custody. Cf. *Whitesides v. Whitesides*, 290 Neb. 116, 858 N.W.2d 858 (2015). We have explained that a pleading has two purposes: (1) to eliminate from consideration contentions which have no legal significance and (2) to guide the parties and the court in the conduct of cases. *Id.*

Pleadings frame the issues upon which the cause is to be tried and advise the adversary as to what the adversary must meet. *Id.* See, also, *Heistand v. Heistand*, 267 Neb. 300, 673 N.W.2d 541 (2004). A court's determination of questions raised by the facts, but not presented in the pleadings, should not come at the expense of due process. *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007). While the concept of due process defies precise definition, it embodies and requires fundamental fairness. *Id.* Generally, procedural due process requires parties whose rights are to be affected by a proceeding to be given timely notice, which is reasonably calculated to inform the person concerning the subject and

- 10 -

issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker. *Id.*

The district court determined that the scope of Eric's complaint was limited to the alleged sexual abuse of M.H. as the material change of circumstances justifying modification. The court determined that the pleadings did not provide Ashley with notice reasonably calculated to inform her that custody could be changed on any other basis. Decisions regarding the scope and meaning of pleadings are reviewed for an abuse of discretion. See *Taxpayers Against Casinos v. State*, 478 Mich. 99, 732 N.W.2d 487 (2007).

The district court did not abuse its discretion in its determination of the scope and meaning of Eric's complaint. The complaint alleged that the material change of circumstances was that Ashley had married Matthew and that Matthew was "the subject of an investigation in York County, Nebraska for the sexual assault of the minor child," resulting in a juvenile court case that was eventually dismissed. But neither remarrying nor being the "subject of an investigation" which led to the dismissal of the juvenile proceeding is a circumstance that is inherently material. As the court noted, the material change of circumstances alleged by implication in the complaint was that Matthew had actually sexually assaulted M.H.

The complaint did not allege more. It did not refer to M.H.'s "stress" or any other aspect of her relationship with Matthew. The complaint did not even make direct reference to M.H.'s reports of abuse. At no point did Eric seek to amend the complaint.

*Id.* at 797-98, 925 N.W.2d at 90-91.

The same considerations apply in this case. Justin did not allege gatekeeping or parental alienation as a change of circumstance in his complaint to modify. However, he argues that anything relevant to best interests of the child should nonetheless be considered as a basis for modification. If his argument were correct, there would be no need to allege a specific material change of circumstance. This would require virtually no notice be given in the pleadings. Had Justin wanted to allege additional material changes of circumstance, he could have sought leave to file an amended complaint. He did not do so. On this record we cannot find that the district court abused its discretion by failing to consider allegations not pled in Justin's complaint to modify.

## 2. CHILD SUPPORT

In reviewing the issue of child support, the district court found that the earnings of the parties as represented in one of Justin's submitted child support calculations was correct and that a *Prochaska* calculation should be done taking into account Justin's obligation to support E.T. See *Prochaska v. Prochaska*, 6 Neb. App. 302, 573 N.W.2d 777 (1998). Based on these findings, the court lowered Justin's child support from $611 to $541 and made its order effective July 1, 2019 (the first full month following trial). The court dismissed Nicole's counterclaim seeking an upward adjustment of child support. The district court declined to retroactively grant Justin a credit for

health insurance premiums paid for K.T. The court reasoned that Justin had not raised this issue in his original appeal nor in any subsequent litigation until filing his complaint to modify in January 2019. The court did state that it had considered and deducted health insurance costs for purposes of the new child support calculation.

In his motion to alter or amend, Justin pointed out that the new calculation submitted by him and adopted by the court did not give him a credit for health insurance premiums paid on K.T.'s behalf. The court found that the evidence adduced at trial did not demonstrate any specific monthly amount paid for health insurance. The court further found that the supplemental evidence, offered and received (over objection) at the hearing on the motion could not be considered since it was submitted following the close of evidence. We find no abuse of discretion in the district court's decision.

First, we agree with the district court that the court could not and should not grant Justin a credit for health insurance premiums paid dating back to the original decree. Justin did not appeal the district court's award of child support in *Thompson I*. No complaint to modify child support was filed until January 2019. Our Supreme Court has held that absent equities to the contrary, child support modifications should generally apply retroactively to the first day of the month following the filing of the complaint to modify. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013). Therefore, had Justin proved what he had paid for health insurance specifically relating to K.T. during the period since filing his complaint to modify, he would have been entitled to a credit retroactive to February 1, 2019, absent equities to the contrary. For the sake of completeness, we note that Justin neither assigns nor argues that the reduction of child support granted to him on the basis of the parties' changes to income and the birth of E.T. should have been made retroactive to February 1. Therefore, we do not address it.

We do note that contrary to the district court's original finding, no credit was given to Justin in the court's child support calculation attached to its order. However, the evidence adduced at trial provided no basis for the court to make a determination as to what if any portion of Justin's health insurance premium was attributable to covering K.T. The only evidence adduced at trial related to the cost of health insurance is one pay stub which shows a deduction for "H & A Family" in the amount of $129.86. There is no delineation of how much of this premium is due to the coverage of K.T. on the health plan. Moreover, we note that during the relevant time period (from the filing of the complaint to modify until trial), Justin's family would have included Justin, Stephani, K.T., and E.T. No evidence was adduced which indicated that Justin was paying more for coverage for four people than he would have paid for three.

We further agree that the supplemental evidence offered by Justin and received by the court could not be utilized by the court for purposes of Justin's motion to alter or amend. A postjudgment motion must be reviewed based on the relief sought in the motion. *Woodhouse Ford v. Laflan*, 268 Neb. 722, 687 N.W.2d 672 (2004). Here, Justin's motion did not seek a new trial nor did it ask to reopen or supplement the evidence. The motion only asked the court to reconsider certain aspects of its prior order, including its child support calculation. As such, the district court did not abuse its discretion by failing to consider the substantive evidence received at the hearing on the motion.

Finally, we note that even if the substantive exhibit received at the motion to alter or amend could be considered, it would not change the result. Exhibit 241, an email document describing

the monthly cost of single as opposed to family insurance coverage, in no way indicates that the cost of covering two children is greater than the cost of covering one. We find no abuse of discretion in the district court's order of child support.

### 3. ATTORNEY FEES

Justin's final assignment of error is that the district court erred in denying his request for attorney fees. Justin argues that Nicole had the ability to pay his fees and that her alienation of the minor child from her family and her decision to deny Justin expanded parenting time necessitated the present action. We addressed attorney fees in *Pearrow v. Pearrow*, 27 Neb. App. 209, 217, 928 N.W.2d 430, 437 (2019). We stated:

> Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits. *Id.* A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases. *Id.* Thus, there was authority, in this modification of a dissolution decree case, for the awarding of attorney fees. See *id.*
>
> In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Id.*

Here, the parties have similar incomes. While Justin did obtain some reduction in child support, the primary issue was custody, an issue upon which he did not prevail. We find no abuse of discretion in the district court's decision to deny Justin's request for attorney fees.

### VI. CONCLUSION

Having considered and rejected all of Justin's assignments of error, we affirm the order of the district court.

AFFIRMED.