Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/05/2019 09:06 AM CDT

ERIC H., APPELLANT, V.
ASHLEY H., NOW KNOWN AS
ASHLEY E., APPELLEE.

___ N.W.2d ___

Filed April 5, 2019.    No. S-18-253.

1. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.

2. \_\_\_\_: \_\_\_\_. In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

3. **Modification of Decree: Words and Phrases.** A material change of circumstances constituting grounds for modification of a dissolution decree means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently.

4. **Pleadings.** Pleadings frame the issues upon which the cause is to be tried and advise the adversary as to what the adversary must meet.

5. **Pleadings: Appeal and Error.** Decisions regarding the scope and meaning of pleadings are reviewed for an abuse of discretion.

6. **Modification of Decree: Child Custody.** Before the district court considers whether a change of custody is in the best interests of the children, it must first find that there has been a material change of circumstances that has occurred since the entry of the prior order.

7. **Modification of Decree: Child Custody: Proof.** The party seeking modification of a custody order must prove a material change in circumstances by a preponderance of the evidence.

8. **Evidence: Words and Phrases.** Competent evidence is evidence that is admissible and tends to establish a fact in issue.

Appeal from the District Court for Hall County: John H. Marsh, Judge. Affirmed in part, and in part reversed and remanded with directions.

Samuel R. O'Neill, of Svehla Law Offices, P.C., L.L.O., for appellant.

Stephen T. Knudsen, of Grafton Law Office, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

## I. NATURE OF CASE

A father appeals from the district court's denial of his motion to modify custody of a minor child after the child reported that her stepfather was sexually abusing her. The district court found that the father had failed to prove that the reported abuse had occurred. We conclude that the district court applied the correct standard of proof and did not abuse its discretion in its determination of the scope and meaning of the father's complaint. However, we also conclude that the court made an error of law in finding there was "no competent evidence" of sexual abuse by the stepfather. Consequently, we affirm in part, and in part reverse and remand with directions to consider all competent evidence adduced at trial.

## II. BACKGROUND

Eric H. and Ashley H., now known as Ashley E., were divorced in 2015. One minor child, M.H., was born to the marriage. Pursuant to a prior joint stipulation to modify, the district court entered an order in November 2016 providing for joint legal and physical custody, with a parenting schedule that gave each parent equal time with M.H.

### 1. May 24, 2017, Ex Parte Order

On May 24, 2017, Eric moved for an ex parte order giving him full custody of M.H. until a sexual assault investigation

could be concluded. Eric averred that M.H., 6 years old at that time, had reported that Matthew E., Ashley's husband and M.H.'s stepfather, sexually assaulted her. The district court issued an ex parte order that same date, suspending Ashley's parenting time until further order of the court.

## 2. DEFERRAL OF JURISDICTION TO JUVENILE COURT

On June 6, 2017, the district court entered an order declining to exercise further jurisdiction until the juvenile court was no longer exercising jurisdiction under a petition to adjudicate pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016).

The juvenile case pertaining to the allegations of sexual abuse was dismissed on September 15, 2017. It was undisputed that Matthew had not been arrested in relation to M.H.'s report or charged with any crime, though law enforcement did investigate. A medical examination conducted during the juvenile investigation showed no signs of abuse.

## 3. COMPLAINT TO MODIFY

On September 22, 2017, Eric filed in the district court an amended complaint to modify the November 2016 order of joint physical and legal custody and award Eric primary custody subject to reasonable parenting time by Ashley. The complaint described the material change of circumstances as:

> [Ashley] has remarried to Matthew . . . . [Matthew] was the subject of an investigation in York County, Nebraska for the sexual assault of the minor child. The case was in the Juvenile Court of York County, Nebraska located at case number JV 17-28. The case was dismissed on September 15, 2017.

## 4. SEPTEMBER 26, 2017, EX PARTE ORDER

The same day that Eric filed to modify custody, he also moved for a new ex parte order suspending Ashley's parenting time with M.H. In an affidavit attached to the motion, Eric described the reasons why, despite the dismissal of the juvenile

case, he still believed that "something happened" and that M.H. would be in danger if she had unsupervised visitation with Ashley. Eric's wife, Cassie H., also submitted an affidavit in support of the motion.

The affidavits described that M.H. had reported to Eric and Cassie that Matthew pulled her pants down and touched her inappropriately. Further, M.H. had patted Eric's private parts and told him that Matthew had said it was "ok" to do that. Eric and Cassie described that M.H. was wetting the bed and otherwise "not acting normal" when she first reported the abuse. They alleged that M.H. had improved during the time that visitation with Ashley was suspended.

The ex parte order was granted pending a hearing on October 4, 2017. After the October 4 hearing, the court vacated the ex parte order.

In vacating the ex parte order, the court concluded that Eric had failed to prove by a preponderance of the evidence that M.H., by that time 7 years old, was the victim of sexual abuse or was otherwise endangered in Ashley's home. The court noted that the initial interview of M.H., in which she first disclosed any inappropriate behavior by Matthew, was conducted by Cassie, an interested party. Cassie was employed by the Department of Health and Human Services (DHHS) and had completed a course in interviewing children. The court observed that subsequent to the initial interview with Cassie, M.H. attended weekly therapy and it was the therapist's opinion that M.H.'s reports of sexual abuse were made in an "'authentic'" manner consistent with congruent emotions and symptoms. However, the court also stated that testimony that a child is credible has been disapproved in *State v. Doan*, 1 Neb. App. 484, 498 N.W.2d 804 (1993).

The court further noted that M.H. did not testify at the hearing, and it considered the evidence of sexual abuse to be "problematic":

> The Court is left with hearsay statements of a 7-year-old child made to her step-mother and to her counselor.

Offenses committed and against children too young to testify are troubling in that in many cases, the only witness is unable to testify under established rules of evidence. The Court is however constrained by rules of law and must respect a parent's constitutionally protected relationship with the child, as well as protecting the best interest of the child.

The initial interview of the minor child [by Cassie] is problematic, in that it was not conducted by a neutral party. The Court can find no established hearsay exception to the child's statements. It is uncertain whether this initial interview and continued residence with the stepmother influenced the child's statements to the counselor.

### 5. Hearing on Motion to Modify

The hearing on the complaint to modify was held on February 8, 2018. Ashley, Eric, and Cassie testified. Additionally, a mental health practitioner, Lisa Pattison, testified, and the notes from another mental health practitioner, Cynthia McDowell, were entered into evidence. Finally, the court conditionally accepted into evidence notes from an interview of M.H. conducted by a child advocacy center, subject to its ruling on Ashley's hearsay objection. A caseworker with DHHS who was assigned to M.H. during the juvenile investigation testified mainly for the purpose of establishing foundation for the interview notes. M.H. did not testify at the hearing.

### (a) Bed-Wetting and Other Behaviors

Eric and Cassie testified that, generally, on the day that M.H. transitions from Ashley's custody to Eric's custody, M.H. will act differently than she normally does, staring off into space and crying easily. After a "good night's sleep," however, she is usually fine.

During the week of May 20, 2017, M.H. wet the bed while at Eric and Cassie's house. She had also had an accident at Ashley's house that week.

Cassie testified that the last time M.H. had wet the bed at their home was in December 2016. Ashley testified that M.H. stopped wetting the bed regularly when she was 4 years old, but that she would occasionally still wet the bed. According to Ashley, bed-wetting occurred most frequently when M.H. had a urinary tract infection. According to Ashley, M.H. had a urinary tract infection the week of May 20, 2017.

According to Eric and Cassie, from May until the end of June 2017, M.H. continued to wet the bed at Eric's house, a total of approximately 23 times. Eric and Cassie also described that M.H. started having frequent nightmares about a monster.

M.H. started mental health counseling in June 2017, which was arranged by Eric during his parenting time. Eric and Cassie testified that after M.H. began counseling, M.H. stopped wetting the bed or having nightmares. Eric and Cassie did not dispute that in July 2017, during the time that M.H. was in Eric and Cassie's sole physical placement pending the conclusion of an investigation by DHHS, she was diagnosed with a urinary tract infection.

### (b) M.H.'s Initial Reports of
### Abuse by Matthew

During the week of May 20, 2017, when Cassie learned of M.H.'s bed-wetting, she obtained Eric's permission to ask M.H. some questions. She explained that she had child interview training. Cassie testified without objection that when Cassie asked M.H. some questions, M.H. told Cassie that Matthew had pulled her pants down and touched her private parts. Eric reported this to Ashley.

Ashley testified that she was shocked when Eric told her that M.H. had reported abuse by Matthew. She had no prior knowledge of any abuse or reports of abuse. She did not see any signs at home that M.H. might be experiencing abuse. But she supported Eric's decision to call Child Protective Services, because she "wanted to know what the truth was."

Ashley stated that she fully cooperated with the investigation. Matthew and Ashley at all relevant periods of time have continued living together. Ashley noted that M.H. was upset that she was not allowed to see Matthew during supervised visitation while the juvenile case was pending.

When asked whether she believed M.H.'s allegations, Ashley explained that she did not know what had happened. She testified, "I'm not saying that she's lying, but it's just based on what I see at home and what [M.H.] tells me just — I don't know what the truth is." She explained further, "I don't see the signs of what I would see for somebody that would be sexually abused." Ashley was "not saying [M.H. was] lying, but just all the stories I was told, they don't add up to what I see [M.H.] do."

### (c) M.H.'s Reports of
### Abuse by Classmates

According to Ashley, the same week that M.H. reported Matthew had sexually assaulted her, she told Ashley that some boys at school had come up behind her, pulled her pants down, and touched her. DHHS investigated the report. According to Cassie, who was familiar with the allegations as well, a boy was expelled in relation to the incident. But, according to a caseworker with DHHS who was assigned to M.H. during the juvenile investigation, M.H. and a boy were "playing a game" and the boy "patted her — popped her on the butt a little bit, but there was nothing else other than that."

### (d) Counseling

Mental health counseling for M.H. was arranged by Eric and Cassie without Ashley's knowledge or consent. M.H. began her counseling with McDowell. Later, McDowell became ill. She was unable to testify at the hearing.

### (i) Exhibit 16: Counseling Notes

Exhibit 16, which contained McDowell's progress notes from 19 sessions with M.H., was entered into evidence over

Ashley's foundation objection. Ashley did not object on hearsay grounds. In those notes, McDowell described that M.H. had disclosed to her consistent details of sexual abuse by Matthew, as well as coaching by Ashley not to disclose the abuse.

According to McDowell, M.H. had described to her that Matthew "'puts his hands on my private parts'" and "'puts his potty on my potty and it bled.'" M.H. also reported to McDowell that Matthew had "'hit my potty with his potty'" and that she "'pee[ed] in my pants.'"

M.H. reportedly told McDowell that the first time Matthew took off her clothes, she was lying in bed for a nap, Matthew came in and took off her pants, and "'[H]e had a glass and he dropped it and then he picked it up and put it inside my potty.'" M.H. told McDowell that it hurt and that M.H. had screamed. According to M.H., Ashley came in and "'put some napkins on it.'"

### (ii) Pattison's Testimony

M.H. began seeing Pattison in November 2017. Without objection, Pattison testified that she had seen M.H. seven times since then. She testified that M.H. had consistently told her that she had been touched inappropriately by Matthew. M.H. did not go into details other than to say that it happened in her room, that there was glass involved, and that it hurt. According to Pattison, M.H. told her that Ashley was working on making sure that it was safe for her to go home.

When Pattison raised the possibility of M.H.'s having to testify in the juvenile proceedings, Pattison observed M.H. become "very, very frightened that her mom and her stepdad would be in the room." Pattison testified, further, that after a joint session with Ashley, Eric, and Cassie, M.H. seemed more reluctant to talk with her. On January 11, 2018, after that joint session, M.H. reported to Pattison that a boy had touched her at school.

Pattison explained that bed-wetting often coincides with child sexual abuse. She acknowledged that it is inappropriate

for an interested person, such as a stepparent, to conduct a sexual abuse interview. However, she did not see any signs that M.H. had been coached to make the report of sexual abuse. Pattison opined that Matthew had sexually abused M.H.

### (e) Exhibit 19: Child Advocacy
### Center Interview Notes

During the hearing, the court provisionally accepted into evidence exhibit 19, over Ashley's hearsay objection. M.H. was interviewed by a child advocacy center forensic interviewer on May 22, 2017, and exhibit 19 contained the notes from that interview. In the interview, M.H. made reports of sexual abuse similar to those described above.

### 6. ORDER DENYING MODIFICATION

The court dismissed the amended complaint to modify. The court found that a "fair implication" of the material change of circumstances alleged in the complaint to modify was that "the stepfather had actually sexual [sic] abused the child." The court also stated that finding a material change of circumstances based upon the "mere fact of filing the June the [sic] juvenile petition, which was then dismissed without adjudication may violate due process." The court thus limited its inquiry to whether Eric had proved that Matthew had abused M.H.

The court concluded that Eric had failed to prove by a preponderance of the evidence that Matthew had sexually abused M.H. It explained:

> The Court received records of mental health practitioners which include a diagnosis of adjustment disorder with mixed disturbance of emotions and conduct. While the Court can make no finding that the stepfather sexually abused the child counseling records indicate that his presence appears to be a source of stress for the child. The father and stepmother's testimony suggests that the child the [sic] better during the time that the child had limited contact with her mother.

. . . .

. . . As noted the court finds no competent evidence that the stepfather has such [sic] abused the minor child. In making these findings, the court did not consider exhibit 19. The court found that exhibit 19 was inadmissible hearsay.

The court found that while the counseling records indicated that Matthew's presence "appears to be a source of stress for the child," "the pleadings did not provide [Ashley] with notice reasonably calculated to inform her that custody would be changed on a basis other than the sexual abuse investigation and subsequent filing and dismissal of a juvenile petition."

Eric appeals.

## III. ASSIGNMENTS OF ERROR

Eric assigns that the district court (1) erred in concluding that he had to prove by a preponderance of the evidence that Matthew sexually abused M.H., (2) erred in concluding that the pleadings did not provide Ashley with notice reasonably calculated to inform her that custody could be changed on a basis other than the sexual abuse investigation and subsequent filing and dismissal of a juvenile petition, and (3) abused its discretion when it failed to grant Eric's motion to modify the custody decree.

## IV. STANDARD OF REVIEW

[1] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015).

[2] In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## V. ANALYSIS

[3] Prior to the modification of a child custody order, two steps of proof must be taken by the party seeking the modification. First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). See, also, *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). Next, the party seeking modification must prove that changing the child's custody is in the child's best interests. *Hopkins v. Hopkins, supra.* The issue in this appeal is whether the court erred in finding that Eric had failed to show the occurrence of the alleged material change in circumstances. The court did not proceed beyond this first step to address whether a change in custody was in M.H.'s best interests. A material change of circumstances constituting grounds for modification of a dissolution decree means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Collett v. Collett*, 270 Neb. 722, 707 N.W.2d 769 (2005).

### 1. Scope of Modification Proceeding

As a threshold matter, Eric asserts that the material change of circumstances considered by the district court was too narrow in scope. Eric suggests that the court erroneously focused on whether actual abuse had occurred instead of considering the possibility that the allegations against Matthew, whether or not true, constituted a material change in circumstances. Eric's argument appears to be that the court should have considered modifying custody based on M.H.'s stress in relation to her contact with Matthew, which was demonstrated by the allegations of abuse. Eric argues in full:

> [Eric's] complaint clearly made allegations that [Ashley's] marriage to Matthew . . . , [Matthew's] behavior, and his proximity to the minor child were at issue. If

the complaint is liberally construed in [Eric's] favor, the court must consider all aspects relating to [Matthew's] contact with the minor child. This includes all evidence of stress that [Matthew] causes the minor child as noted the district court's order. . . . In addition, other pleadings including the original Motion for Ex-Parte Order and second Motion for Ex-Parte Order, and Affidavits in Support of the Motion for Ex-Parte Order clearly indicated that behavior of [Matthew] would be an issue at trial. . . . There is no question that [Ashley] had notice reasonably calculated to inform her that custody could be changed on a basis other than the sexual abuse allegations against [Matthew].

Brief for appellant at 17 (citations omitted).

Neb. Rev. Stat. § 42-364(6) (Reissue 2016) provides that "[m]odification proceedings relating to . . . custody . . . shall be commenced by filing a complaint to modify. . . . Service of process and other procedure shall comply with the requirements for a dissolution action." In certain respects, these statutes specify special pleading requirements. See, e.g., Neb. Rev. Stat. § 42-353 (Reissue 2016). But otherwise, the ordinary rules of pleading apply to proceedings to modify custody. Cf. *Whitesides v. Whitesides*, 290 Neb. 116, 858 N.W.2d 858 (2015). We have explained that a pleading has two purposes: (1) to eliminate from consideration contentions which have no legal significance and (2) to guide the parties and the court in the conduct of cases. *Id.*

[4] Pleadings frame the issues upon which the cause is to be tried and advise the adversary as to what the adversary must meet. *Id.* See, also, *Heistand v. Heistand*, 267 Neb. 300, 673 N.W.2d 541 (2004). A court's determination of questions raised by the facts, but not presented in the pleadings, should not come at the expense of due process. *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007). While the concept of due process defies precise definition, it embodies and requires fundamental fairness. *Id.* Generally, procedural due

process requires parties whose rights are to be affected by a proceeding to be given timely notice, which is reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker. *Id.*

[5] The district court determined that the scope of Eric's complaint was limited to the alleged sexual abuse of M.H. as the material change of circumstances justifying modification. The court determined that the pleadings did not provide Ashley with notice reasonably calculated to inform her that custody could be changed on any other basis. Decisions regarding the scope and meaning of pleadings are reviewed for an abuse of discretion. See *Taxpayers Against Casinos v. State*, 478 Mich. 99, 732 N.W.2d 487 (2007).

The district court did not abuse its discretion in its determination of the scope and meaning of Eric's complaint. The complaint alleged that the material change of circumstances was that Ashley had married Matthew and that Matthew was "the subject of an investigation in York County, Nebraska for the sexual assault of the minor child," resulting in a juvenile court case that was eventually dismissed. But neither remarrying nor being the "subject of an investigation" which led to the dismissal of the juvenile proceeding is a circumstance that is inherently material. As the court noted, the material change of circumstances alleged by implication in the complaint was that Matthew had actually sexually assaulted M.H.

The complaint did not allege more. It did not refer to M.H.'s "stress" or any other aspect of her relationship with Matthew. The complaint did not even make direct reference to M.H.'s reports of abuse. At no point did Eric seek to amend the complaint.

Furthermore, while issues not raised by the pleadings may be tried by express or implied consent of the parties, see Neb. Ct. R. Pldg. § 6-1115(b) and *United Gen. Title Ins. Co. v. Malone*, 289 Neb. 1006, 858 N.W.2d 196 (2015), there was neither evidence of such consent nor evidence that Eric attempted to try any issue other than the allegation of actual sexual abuse. The evidence presented at the hearing focused on whether Matthew had actually sexually abused M.H. Eric did not present evidence of any reason why M.H. would have made false reports. And there is no indication that the issues presented in relation to the ex parte order were any different. The district court did not err in concluding that any change of circumstances different from the alleged sexual abuse was outside the scope of the modification proceeding.

## 2. Standard of Proof
### for Sexual Abuse

Eric also asserts that the district court's determination that he had to prove the allegations of sexual abuse by a preponderance of the evidence imposed an "improper and unworkable burden." Brief for appellant at 9. Eric elaborates that whether the abuse actually occurred was the "wrong inquiry," because "the movant need not prove that some material change—be it abuse and neglect or alcohol abuse—actually occurred (or did not occur). Rather, the court must consider the evidence in the totality and determine whether, in the best interest of the child, modification is warranted." *Id.* at 10.

[6] Eric misunderstands our statements regarding the paramount nature of children's best interests. We have repeatedly held that before the district court considers whether a change of custody is in the best interests of the children, it must first find that there has been a material change of circumstances that has occurred since the entry of the prior order. See, *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016); *Hoschar v. Hoschar*, 220 Neb. 913, 374 N.W.2d 64 (1985), *disapproved on other grounds, Parker v. Parker*, 234 Neb. 167, 449 N.W.2d 553 (1989). See, also, *Schrag v. Spear*,

290 Neb. 98, 858 N.W.2d 865 (2015). Proof of a change of circumstances is not an optional element to a modification proceeding. Proof of a material change of circumstances is the threshold inquiry in a proceeding on a complaint to modify, see *id.*, because issues determined in the prior custody order are deemed res judicata in the absence of proof of new facts and circumstances, see *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999). Furthermore, limiting custody changes to material changes in circumstances avoids extensive and repetitive litigation and unnecessary, potentially harmful fluctuations in the child's life. 67A C.J.S. *Parent and Child* § 145 (2013). A custody order will not be modified absent proof of new facts and circumstances arising since it was entered. See *Rauch v. Rauch, supra*.

If we were to accept Eric's premise that the parent filing the complaint to modify need not prove that some material change actually occurred, then every unproven allegation of new material facts and circumstances would open the door for a new best interests custody inquiry and custody change. We find no merit to Eric's argument that the court conducted the wrong inquiry by focusing on whether he had proved that the alleged material change of circumstances actually occurred.

[7] It does not appear that Eric is challenging the preponderance of the evidence as the applicable burden in establishing the material change of circumstances. At least, Eric does not suggest a different burden of proof. For the sake of clarity, though, we reiterate that the party seeking modification of a custody order must prove a material change of circumstances by a preponderance of the evidence. See, *Goodman v. Goodman*, 180 Neb. 83, 141 N.W.2d 445 (1966); *Young v. Young*, 166 Neb. 532, 89 N.W.2d 763 (1958). See, also, 67A C.J.S., *supra*; Linda D. Elrod, Child Custody Practice and Procedure § 17:4 (rev. ed. 2019). A preponderance of the evidence is the equivalent of "'the "greater weight"'" of the evidence. *Flores v. Flores-Guerrero*, 290 Neb. 248, 253, 859 N.W.2d 578, 583 (2015).

### 3. De Novo Review of Evidence
### of Sexual Abuse

We turn, finally, to the underlying question of whether the court erred in finding that Eric did not prove by a preponderance of the evidence that Matthew sexually abused M.H. In doing so, we do not address whether the court, in finding the evidence of abuse unpersuasive, should have considered exhibit 19. We likewise do not address whether the court should have considered any opinions of mental health practitioners that M.H.'s reports of abuse were credible. On appeal, Eric does not assign these rulings as error. But because we conclude that the court made an error of law in finding there was "no competent evidence" of sexual abuse by Matthew, we reverse, and remand for consideration of all the evidence.

[8] Competent evidence is evidence that is admissible and tends to establish a fact in issue. *Cain v. Custer Cty. Bd. of Equal.*, 298 Neb. 834, 906 N.W.2d 285 (2018). Here, the record contains a considerable amount of evidence which meets this definition.

The fact at issue in this modification trial was whether the child had been subjected to sexual abuse by her stepfather, and evidence at trial, if believed, tended to establish that such sexual abuse had occurred. As noted above, a clinical psychologist testified she had met with the child seven times and the child consistently reported that her stepfather had sexually abused her in her bedroom and that it hurt. Also admitted were treatment notes from a licensed independent mental health practitioner who saw the child 19 times, which notes document that the child consistently reported her stepfather had sexually abused her and that her mother told her not to disclose the abuse. The evidence also showed that the child was experiencing symptoms consistent with sexual abuse and that those symptoms improved during the time the court prevented the stepfather from having contact with her.

In addition to tending to establish a fact in issue, the foregoing evidence was admissible. The child's statements to mental

health professionals, in particular, were admissible under Neb. Rev. Stat. § 27-803(3) (Reissue 2016), because they were made for the purpose of psychological treatment. See *In re Interest of B.R. et al.*, 270 Neb. 685, 708 N.W.2d 586 (2005). And there was no evidentiary bar to the parents' testimony concerning M.H.'s symptoms.

As demonstrated above, Eric introduced competent evidence that Matthew sexually abused M.H. The district court, however, found that there was "no competent evidence that the stepfather has . . . abused the minor child" and, on that basis, concluded that "[t]he father has failed to prove by a preponderance of the that evidence that the stepfather has sexually abused the child."

The district court's earlier order vacating the ex parte order suggests the possibility that the district court found the evidence was not competent, because it was concerned the child's statements to the mental health professionals may have been influenced by the child's father and stepmother during the period of the child's temporary sole physical custody with them after the initial report of abuse. But even if the district court was concerned that the child's statements to mental health professionals had been influenced by her father and stepmother, such a concern would properly go to the weight and credibility to be afforded this evidence, not to whether it is competent. The district court's finding of "no competent evidence," and the absence of any reference to the child's statements, indicates that the district court, rather than considering the weight the statements should be given, did not consider them at all.

It is true that in a bench trial, appellate courts presume that a trial court considers only competent and relevant evidence in rendering its decision. See *Fickle v. State*, 273 Neb. 990, 735 N.W.2d 754 (2007), *modified on denial of rehearing* 274 Neb. 267, 759 N.W.2d 113. But we do not believe that presumption applies here. This is not a case in which the trial court's order is silent as to the evidence it did and did not rely upon. Rather,

this is a case in which the district court explicitly stated that there was "no competent evidence" of a fact in dispute when, as we have explained, there plainly was.

A de novo review of the record clearly shows there was competent evidence adduced that, if believed, tended to establish the child was sexually abused by her stepfather. Because the record contains competent evidence of sexual abuse, it was an error of law for the court to find there was no competent evidence. We cannot review this record de novo for an abuse of discretion, when the trial court, in reaching its decision, relied on an incorrect understanding of the law. See, *State v. McGuire*, 301 Neb. 895, 911, 921 N.W.2d 77, 88 (2018) ("[t]o the extent that the court's ruling was based upon an incorrect understanding of the law, it is not possible for us to review it for an abuse of discretion"); *State v. Myers*, 301 Neb. 756, 919 N.W.2d 893 (2018).

Accordingly, we reverse, and remand with directions. Given the passage of time since the original hearing on the motion to modify, we leave to the district court's discretion whether to appoint a guardian ad litem or to otherwise allow for the expansion of the existing record. In any case, the court is directed to consider all competent evidence adduced before deciding whether Eric has proved a material change in circumstances.

## VI. CONCLUSION

For the foregoing reasons, we affirm in part, and in part reverse and remand with directions to consider all competent evidence adduced at trial.

Affirmed in part, and in part reversed
and remanded with directions.