IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


KASTEN V. FUSS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


KEITH C. KASTEN, APPELLANT,

V.

CARLENE FUSS, NOW KNOWN AS CARLENE NICHOLS, APPELLEE,
AND STATE OF NEBRASKA, INTERVENOR-APPELLEE.


Filed September 1, 2020.    No. A-19-990.


Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

John A. Kinney and Jill M. Mason, of Kinney Mason, P.C., L.L.O., for appellant.

Amie C. Martinez and Megan M. Zobel, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellee.


PIRTLE, ARTERBURN, and WELCH, Judges.

PIRTLE, Judge.

### INTRODUCTION

Keith C. Kasten appeals from an order entered by the district court for Lancaster County following a 2-day trial on the question of whether the original custody agreement should be modified. The trial court denied Kasten's complaint for modification seeking primary physical custody of his 14-year-old daughter and final decisionmaking authority, but the court modified the parenting plan. Kasten also appeals from the trial court's order that he pay $10,000 in attorney fees incurred by the child's mother, Carlene Fuss, now known as Carlene Nichols (Nichols). We affirm the order entered by the district court.

BACKGROUND

Kasten and Nichols are the parents of Charlotte. The parents were never married but they had a relationship prior to the child's birth in October 2004. In September 2005, the trial court entered a stipulated order establishing paternity, custody, and child support. The parents were awarded joint legal custody of the child subject to the mother's final decisionmaking authority. Nichols was awarded primary physical custody, subject to reasonable parenting time for Kasten. The original parenting plan is referenced in the paternity and custody order but it is not made a part of this record. Testimony by the parents describes the original visitation plan as "minimal" for Kasten, limited to one evening per week and one overnight on the weekends. The parties agreed to increase Kasten's visitation in 2016. Nichols described the visitation after 2016 to be more flexible but without a fixed plan. Nichols testified the child would decide when she wanted to see her dad and a "call was made." Nichols testified she believed a specific schedule would be better but the cooperation between them worked until Kasten filed his complaint to modify the original custody order. Nichols testified cooperation became more challenging with litigation pending.

Charlotte has been treating with a clinical psychologist specializing in childhood and family counseling since 2009. The counseling relationship is ongoing and the psychologist, Dr. George Williams, testified at trial. In 2017 Charlotte's behavioral problems escalated to include "throwing age-inappropriate fits" in her mother's home. These same behaviors were not occurring in Kasten's home so the parties made the decision together, in collaboration with Williams, that Charlotte should have extended summer parenting time with her father. During the summer Charlotte would refuse to have visitation with her mother. In retrospect, Nichols regrets expanding Kasten's visitation because Charlotte seemed to be dictating where she would or would not go but at the time she thought she was doing what was best for Charlotte. By October 2017, Charlotte returned to her mother's home. In February 2018, Kasten again had another period of extended visitation while influenza A was ravaging the Nichols' home. Charlotte has Type I Diabetes and her primary care doctor suggested she be isolated from her mother's household.

Sometime prior to May 2018 Charlotte accompanied her father to an office appointment with his lawyer in order to institute this modification action. Nichols testified if she tried to discipline or redirect Charlotte in early 2018, the child would threaten Nichols by telling her there was going to be a lawsuit and she would tell the judge how it really was. Nichols began to wonder if Charlotte was telling the truth about a lawsuit but in May 2018, Kasten filed a complaint for modification seeking a change in physical custody of Charlotte and a new parenting plan. Kasten alleged several material changes in circumstances affecting Charlotte's best interests, including Charlotte's desire to live with him and Nichols' failure to properly supervise Charlotte; Nichols' failure to meet her needs; and Nichols' failure to provide an appropriate and nurturing environment. Kasten testified Charlotte thrives on the farm, tending to her animals and enjoying riding on the equipment. Nichols testified that after she was served with the complaint, Charlotte continued to say inappropriate things to her about "you better get your butt to Court."

Williams testified Charlotte complains about authority figures, especially her mother. Williams testified Kasten reinforces these complaints and sometimes Kasten joins in the disparaging talk by undermining Nichols, calling her names, and taking Charlotte's side against

educators and medical professionals. Williams testified this reinforcement by Kasten alienates Charlotte from Nichols and it empowers Charlotte. Williams has also observed Charlotte bullying and manipulating her father and he has counseled Kasten against engaging in "rescuing" behavior when Charlotte is unable to cope with the rules in Nichols' home. Williams testified Charlotte is not "an accurate reporter" and she misrepresents what is happening in Nichols' home in order to "stir [Kasten] up" and "gets him protective" and he loses sight of how he is being manipulated.

When the litigation related to the modification started, Williams testified his treatment records were requested by the lawyers. Williams produced the records but he told the lawyers the records should not be shared with their clients. Williams was aware that Charlotte likes to ransack her father's home office and she has discovered documents related to legal and treatment matters which is not in her best interests. Williams testified he was very concerned about his records finding their way into Kasten's home.

Williams testified that he believed it was in Charlotte's best interests for one parent to be in charge and that Kasten would benefit from parenting education classes. Williams validated Nichols' concern that if Kasten is the legal custodian her relationship with Charlotte will be poisoned.

Charlotte testified under seal in the judge's chambers. Williams testified this also empowered the child. Nichols testified she was opposed to Charlotte testifying initially because she was concerned the child would be pressured. Nichols said she agreed to Charlotte testifying when the chambers option was presented. Nichols testified Charlotte's voice should be heard in spite of the fact she is not an accurate reporter.

The trial court did not disturb the original custodial order which placed physical custody with Nichols and gave her final decisionmaking authority when there was a difference of opinion between the parents. The trial court adopted a new parenting plan which expands Kasten's visitation.

Nichols testified that Kasten did not make any effort to negotiate about changes to the original custody order before filing suit and that attempts to mediate the matter after suit had been filed were fruitless. Nichols testified her legal bill might not have been so high if Kasten had reached out to her or been more responsive prior to filing suit. The court ordered Kasten to pay half, or $10,000 toward Nichols' attorney fees.

## ASSIGNMENTS OF ERROR

Kasten assigns as error (1) the trial court's order that physical custody of the child remain with Nichols and (2) its award of attorney fees.

## STANDARD OF REVIEW

Child custody and visitation determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Eric H. v. Ashley H.*, 302 Neb. 786, 925 N.W.2d 81 (2019); *Welch v. Peery*, 26 Neb. App. 966, 925 N.W.2d 375 (2019). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and

unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Welch v. Peery, supra.* The same standard applies to appellate review of an award of attorney fees. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014).

In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Randy S. v. Nicolette G.*, 302 Neb. 465, 924 N.W.2d 48 (2019); *Coleman v. Kahler*, 17 Neb. App. 518, 766 N.W.2d 142 (2009).

## ANALYSIS

### CUSTODIAL DECISION

Custody of a minor child will not be modified unless there has been a material change of circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *State on behalf of Savannah E. & Catilyn E. v. Kyle E.*, 21 Neb. App. 409, 838 N.W.2d 351 (2013). Prior to the modification of a child custody order, two steps of proof must be taken by the party seeking the modification. First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. *Eric H. v. Ashley H.*, 302 Neb. 786, 925 N.W.2d 81 (2019). In cases involving the modification of child custody, a material change of circumstances constituting grounds for modification means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. See *Fichtl v. Fichtl*, 28 Neb. App. 380, 944 N.W.2d 516 (2020). Next, the party seeking modification must prove that changing the child's custody is in the child's best interests. *Eric H. v. Ashley H., supra.* The party seeking modification of child custody bears the burden of demonstrating a material change in circumstances occurring after the entry of the earlier custodial order which affects the best interests of the children. *Id.*

Neb. Rev. Stat. § 43-2923(6) (Reissue 2016) provides:

In determining custody and parenting arrangements, the court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of . . .

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning; [and]

(c) The general health, welfare, and social behavior of the minor child.

The Nebraska Supreme Court has also held that in determining a child's best interests courts may consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy

educational needs of the child; and the general health, welfare, and social behavior of the child. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

Nichols has been Charlotte's custodial parent since her birth and the original custodial agreement entered in 2005 formalized this arrangement, subject to very limited visitation for Kasten. This arrangement worked well over the years, but by 2016, Kasten indicated he would like more parenting time. The parents cooperated with each other in accommodating Charlotte's schedule, and Kasten's increased parenting time was "flexible" but without a formalized plan.

Nichols has been the parent primarily responsible for Charlotte's medical and dental appointments, her religious upbringing, and decisions related to her education and extracurricular activities. Nichols married in 2015 and lives with her husband and Charlotte in Hickman, Nebraska. Charlotte attends Norris High School where she participates in volleyball and show choir. Charlotte and her mother enjoy exercising at the gym together and taking walks along their property. They are both active in their church and they attend style shows together. Charlotte has her own room and various household chores, including some care of her young siblings. Charlotte is thriving at Norris High School in her mother's view and Nichols has confidence in the school nurse as an ally in the monitoring of Charlotte's diabetes during the school day.

Both parents agree Charlotte is a "tomboy" and she enjoys going to her father's farm near Greenwood, Nebraska. Kasten testified he farms 1,200 acres owned by his parents and he works "crazy, long hours" for 2 months in the spring and 2 months in the fall. Kasten testified he enjoys hunting and fishing with his daughter and she enjoys tending to farm animals and baking with her grandmother. Kasten acknowledged he "rescues" Charlotte when she calls him to complain about rules at her mother's home. He also acknowledges he has not been supportive of Nichols in the past and has undermined the relationship between Charlotte and her mother and that he disparages Charlotte's various medical providers in Charlotte's presence. Kasten testified he filed the motion to modify custody because Charlotte told him she wanted to live with him.

In our de novo review of this record, Kasten did not do enough to persuade the trial court that circumstances have materially changed since 2005 such that the original custodial order should be modified to change Charlotte's placement. Kasten's primary purpose in filing the motion to modify was because Charlotte wanted to come live with him. Williams' testimony makes clear, and the parents agree, that Charlotte is manipulative and struggles with the truth. We note that the trial court as the trier of fact had the right to test the credibility of witnesses by their self-interest and to weigh it against the evidence, or the lack thereof. See *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019). We give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. See, *Randy S. v. Nicolette G.*, 302 Neb. 465, 924 N.W.2d 48 (2019); *Coleman v. Kahler*, 17 Neb. App. 518, 766 N.W.2d 142 (2009). Without more evidence from Kasten, we do not conclude the trial court abused its discretion in finding that no material change in circumstances occurred which affected the best interests of Charlotte. Therefore, we conclude that it was not an abuse of discretion to leave the original physical custody order in place.

ATTORNEY FEES

The trial court found that testimony by Williams about the dynamics of the relationship between the parents and Kasten's continued efforts to thwart the child's therapy was a factor in its decision that Kasten should pay $10,000 toward Nichols' attorney fees. An award of attorney fees in a modification matter is discretionary and is reviewed for an abuse of discretion.

Kasten did not raise any complaints about Nichols' parenting or any concerns about Charlotte's education or medical care. The parents had worked cooperatively since 2005 in arranging parenting time and they had engaged in family therapy with Williams in an effort to address Charlotte's mental health and behavioral needs. But by 2018, with encouragement from Charlotte, Kasten filed a modification case without first trying to resolve the issues collaboratively. Nichols testified that after the litigation was filed, negotiating with Kasten was not possible and the child had been empowered and became harder to discipline and redirect.

Attorney fees in modification cases may be awarded to prevailing parties or assessed against those filing frivolous suits. *Roberts v. Roberts*, 25 Neb. App. 192, 903 N.W.2d 267 (2017); *Coffey v. Coffey*, 11 Neb. App. 788, 661 N.W.2d 327 (2003). The award of fees depends on multiple factors including the nature of the case, the services performed, the results obtained, customary charges, and general equities of the case. *Burcham v. Burcham*, 24 Neb. App. 323, 886 N.W.2d 536 (2016). We believe the facts in this case supported the award.

The trial of the case took 2 days. Depositions were taken, medical records were produced and reviewed, and formal mediation was undertaken but proved unsuccessful. Nichols asked Kasten to pay all but $1,500 of her $20,000 legal fees. Nichols was successful in defending the modification of custody. We cannot conclude it was an abuse of discretion to order Kasten to be responsible for $10,000 of Nichols' fees.

CONCLUSION

The order of the trial court is affirmed.

AFFIRMED.