IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


LINDVALL V. LUNDBERG


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


DREW O. LINDVALL, APPELLEE AND CROSS-APPELLANT,

V.

MEGAN M. LUNDBERG, FORMERLY KNOWN AS MEGAN M. BORGMANN,
APPELLANT AND CROSS-APPELLEE.


Filed June 6, 2023.    No. A-22-485.


Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Reversed and dismissed.

Ryan K. McIntosh, of Brandt, Horan, Hallstrom & Stilmock, for appellant.

Steffanie J. Garner Kotik, of Kotik & McClure Law, for appellee.


PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

PIRTLE, Chief Judge.

### INTRODUCTION

Megan M. Lundberg, formerly known as Megan M. Borgmann, appeals from the district court for Lancaster County, which modified the physical custody and parenting time arrangement between Megan and Drew O. Lindvall as it relates to their minor child. Megan challenges the evidence in support of the district court's physical custody modification, and Drew cross-appeals, challenging the district court's failure to modify child support. For the reasons that follow, we reverse and dismiss.

### BACKGROUND

Megan and Drew are the parents of one minor child born in 2012. Megan and Drew were never married and they live apart. Both parties live with a significant other and additional minor

- 1 -

children that are not at issue in this appeal. In October 2020, the district court awarded the parties joint legal custody of their minor child, and Megan was awarded primary physical custody subject to Drew's rights of parenting time as provided in a mediated parenting plan which the court approved and incorporated into its order.

The parenting plan provided that Drew "have reasonable and liberal rights of parenting time," and established a "nine-five" parenting time schedule during the school year and a "seven-seven" parenting time schedule during the summer. Under the nine-five schedule, Megan exercised 9 days of continuous parenting time beginning on Monday at the commencement of school and ending the following Wednesday after school. On those Wednesdays Drew would pick the child up from school and exercise 5 days of continuous parenting time from Wednesday to Monday at the commencement of school. Under the summertime schedule, both parties exercised 7 days of continuous parenting time on an alternating basis, and the minor child was to be exchanged on Mondays at 7 p.m.

Roughly 8 months after the parties' parenting plan was adopted, Drew filed a complaint to modify the parenting plan, seeking joint physical custody and an equal seven-seven parenting time schedule during the school year. Drew alleged that circumstances had materially changed, to wit:

a. [Megan] refuses to co-parent the minor child ion [sic] a meaningful way.

b. [Megan] refuses to allow positive interactions between [Drew] and the minor child during [Megan's] parenting time.

c. [Megan] limits [Drew's] ability to have a meaningful relationship with the minor child because of her actions.

d. [Megan] acts in ways that are contrary to the best interests of the minor child.

In answer, Megan denied Drew's allegations as to a material change in circumstances.

Trial on Drew's complaint was held in February 2022. The only witnesses to testify at trial were the parties themselves, along with brief testimony from Megan's husband and Megan's sister. The parties stipulated to the admission of 10 exhibits. The exhibit most discussed at trial was exhibit 3, which contains 226 pages of correspondence between the parties via an application called "AppClose." Both parties agreed that AppClose had been their primary means of communication between October 2020 and February 2022.

The central dispute at trial was whether there had been a material change in circumstances warranting modification of physical custody and the parties' parenting time arrangement. Drew's position was that "while these parents each love their child, there are communication issues. . . . [D]uring the school year especially, the current parenting arrangement does not behoove their minor child . . . [and] the evidence will show that a seven-seven [parenting time schedule] would be more appropriate." In contrast, Megan's position was that there had not been a material change in circumstances warranting modification of physical custody or the parenting time schedule. Megan acknowledged the parties' communication issues, but she argued that while "[t]here's clearly a conflict between the parties, . . . that is nothing new." Megan maintained that "[s]imply changing the parenting time to seven-seven is not going to alleviate the conflict of the parties."

The bulk of the parties' testimony at trial pertained to their contentious relationship and the variety of conflicts that had arisen as a result. For example, Drew testified to issues in scheduling the minor child's medical appointments and extracurricular activities, and he accused Megan of

denying him telephone contact and generally restricting his contact with the minor child. On the other hand, Megan testified that Drew communicated with her in an "[a]ggressive, demeaning, belittling, rude, [and] scolding" manner, which left her feeling "intimidated" and "upset." Megan further suggested that Drew refused to co-parent in a meaningful way, and she highlighted an incident in which Drew took the minor child to get her ears pierced without Megan's approval.

The issue most discussed at trial was Megan's alleged reluctance to cooperate with Drew's requests for additional parenting time beyond that which was outlined in the parenting plan. Drew testified that he had requested additional parenting time on 27 different occasions, and that Megan either refused those requests or would agree only if Drew forfeited an equal amount of his allotted parenting time in return. Drew testified to only one occasion in which Megan allowed him to exercise extra parenting time without simultaneously insisting that they "trade" parenting time. Megan testified that, from her perspective, Drew "[c]onstantly" requested additional parenting time, and that she found it difficult to accommodate all of his many requests. Megan then testified to a number of requests that she did accommodate, but Megan also confirmed multiple occasions in which she insisted on trading parenting time rather than agreeing to Drew's requests for extra time.

Altogether, Drew's position was that, in light of the parties' contentious relationship, the existing parenting time schedule had proven unworkable. Drew argued that an equal seven-seven parenting time schedule during the school year would alleviate much of the conflict between the parties and was thus in the best interests of the minor child. In contrast, Megan's position was that there simply had been no material change of circumstances warranting modification of the existing parenting time schedule. Megan emphasized that the parties had "challenges" prior to the 2020 parenting plan, and that those same challenges continued after that parenting plan was adopted. Rather than alleviate the conflict between the parties, Megan suggested that an equal seven-seven parenting time schedule during the school year would actually make matters worse.

After trial, the district court entered an order of modification, granting Drew's request for joint physical custody and modifying the parenting plan to establish an equal seven-seven parenting time schedule during the school year. While the court found that a material change of circumstances had occurred, it failed to make any explicit findings as to what the nature of that change had been. Megan appealed, and Drew cross-appealed.

ASSIGNMENTS OF ERROR

Megan assigns that the district court erred in (1) finding that a material change in circumstances affecting the minor child's best interests had occurred, (2) awarding the parties joint physical custody, and (3) changing the exchange day and time for the minor child.

On cross-appeal, Drew assigns that the district court erred in failing to recalculate child support in light of the modification of physical custody.

STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Eric H. v. Ashley H.*, 302 Neb. 786, 925 N.W.2d 81 (2019). In child custody cases, where the credible evidence is in conflict on a material issue of

fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

ANALYSIS

Prior to the modification of a child custody order, two steps of proof must be taken by the party seeking the modification. *Id.* First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. *Id.* Next, the party seeking modification must prove that changing the child's custody is in the child's best interests. *Id.* A material change in circumstances eludes precise and concise definition. *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021). Generally speaking, a material change in circumstances is the occurrence of something which, had it been known to the district court at the time of the initial custody order, would have persuaded the court to decree differently. See *id.*

The Nebraska Supreme Court has explained that proof of a change in circumstances is not an optional element to a modification proceeding. *Weaver v. Weaver, supra.* Rather, proof of a material change of circumstances is a threshold inquiry in a proceeding on a complaint to modify, because issues determined in the prior custody order are deemed preclusive in the absence of proof of new facts and circumstances. *Id.* Furthermore, limiting custody changes to material changes in circumstances avoids extensive and repetitive litigation and unnecessary, potentially harmful fluctuations in the child's life. *Id.*

Megan assigns that the district court erred in finding a material change of circumstances affecting the minor child's best interests. Megan argues that "there has been absolutely no changes in circumstances that affect the minor child." Brief for appellant at 11. Megan emphasizes the relatively short period of time that had passed since the adoption of the parenting plan in October 2020, and she argues that "there was virtually no evidence before the Court of any circumstances different than when the parties attended mediation" and the court adopted that plan. *Id*. at 10-11. Upon our de novo review of the record, we agree.

The vast majority of the evidence pertained to the continuation of the parties' contentious relationship and communication issues, and there was no dispute that those circumstances existed at the time the parties' parenting plan was adopted. Drew emphasizes Megan's reluctance to provide him with additional parenting time above and beyond that which was outlined in the parenting plan, however, Megan was under no obligation to do so. Moreover, the record reflects that Megan did accommodate a number of Drew's requests to temporarily modify the parenting time schedule on a case-by-case basis. On appeal, Drew relies on the provision in the parenting plan that he have "reasonable and liberal rights of parenting time." However, there is no evidence in the record that Drew's rights to parenting time had been wrongfully denied, nor is there evidence that Megan was otherwise violating the terms of the parenting plan.

Rather, the record reflects that Drew was understandably frustrated by the continuation of conflict between the parties and the disparate parenting time schedule during the school year. However, as Megan points out, the conflict between the parties is nothing new, and Drew agreed to the custody and parenting time arrangement in October 2020. Drew simply failed to meet his burden to demonstrate new facts and circumstances arising since that time that warrant modification, and it was an abuse of discretion for the district court to find that he had. Thus, we

- 4 -

reverse the district court's order of modification and dismiss Drew's complaint for modification. Because we conclude that Drew failed to satisfy the threshold inquiry as to a material change of circumstances, there is no need to address the remainder of Megan's assignments of error on appeal or Drew's assignment of error on cross-appeal. See *Brumbaugh v. Bendorf*, 306 Neb. 250, 945 N.W.2d 116 (2020) (appellate court not obligated to engage in analysis not necessary to adjudicate the case and controversy before it).

CONCLUSION

For the foregoing reasons, we reverse the district court's order of modification and dismiss the complaint for modification.

REVERSED AND DISMISSED.