IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

SWARTOS V. STEPHEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KEVIN SWARTOS, APPELLANT,

V.

MARLA STEPHEN, APPELLEE.

Filed December 22, 2020.    No. A-20-296.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Steffanie J. Garner Kotik, of Kotik & McClure, for appellant.

Deziree N. Medina, of GordenLaw, L.L.C., for appellee.

BISHOP, ARTERBURN, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Kevin Swartos appeals from an order of the Lancaster County District Court denying his complaint to modify and ordering that Marla Stephen would retain sole legal and physical custody of the parties' minor child, Colten Stephen, subject to a modified parenting plan. We affirm.

## II. BACKGROUND

### 1. DECREE OF PATERNITY

Kevin and Marla are the parents of Colten, who was born in 2008. The record indicates that at all times relevant to this case, Kevin has resided in Volga, South Dakota, and Marla has resided in various locations within Nebraska. The parties were never married. Following Colten's birth, Kevin petitioned the Cherry County District Court for a determination of paternity, custody, visitation, and support in October 2008. A "Decree of Paternity, Custody and Support" was entered on June 26, 2009. The decree established Kevin to be Colten's father and, pursuant to a stipulated

- 1 -

parenting plan, awarded legal and physical custody of Colten to Marla subject to Kevin's parenting time. The decree set forth Kevin's parenting time schedules for 2009 and 2010. For 2011 and all subsequent years, the decree gave Kevin "one long weekend per month commencing Wednesday at 3:00 p.m. until the following Monday at 1:00 p.m." subject to Marla's National Guard schedule. The decree further required Kevin to pay $639 in monthly child support, pay 58 percent of childcare expenses, provide Colten health insurance coverage, and pay 58 percent of out-of-pocket healthcare expenses after Marla paid the first $480 of any such expenses. The court also ordered Kevin to pay retroactive child support for the period from September 2008 until January 2009 at the rate of $750 per month.

## 2. POSTDECREE PROCEEDINGS

Subsequently in May 2010, Kevin motioned for the temporary modification of custody in response to Marla informing Kevin that she would be deployed from July 2010 to July 2011 pursuant to her National Guard obligations. Marla had planned to leave Colten in the care of an unrelated third person for that period without Kevin's consent or modification to the parenting plan. Marla's deployment was later cancelled, and Kevin dismissed the action.

In September 2016, after receiving notice of a National Guard deployment set to begin in April 2017, Marla filed a complaint to modify the decree pursuant to a Temporary Child Responsibility Agreement which gave Kevin temporary custody of Colten for the duration of Marla's deployment. The district court entered an order in October 2016 approving this agreement. Colten remained in Kevin's temporary custody from April 11, 2017, until July 28, after which the agreement terminated and Marla retained full custody of Colten subject to Kevin's parenting time. In October, Marla motioned to transfer venue to Lancaster County, Nebraska, to reflect her moving with Colten from Valentine, Nebraska, to Lincoln, Nebraska. Kevin consented to the transfer.

In March 2019, Marla and Kevin filed a "Stipulation for Modification of Decree" in the Lancaster County District Court. Pursuant to the stipulation, the parties agreed the parenting plan should be modified such that Kevin would have parenting time with Colten "every third weekend from the day [Colten] is released from school at 6:30 p.m. to the day before [he] goes back to school at 5:00 p.m." and from "the first Sunday following [Colten's] release from school for the and continuing until July 21st of each year" subject to Marla's parenting time "every other weekend from Friday at 6:30 p.m. until Sunday at 4:00 p.m." The proposed parenting plan also included an alternating holiday schedule. Further, Kevin and Marla agreed that Kevin would be responsible for $500 per month in child support beginning in April, 50 percent of out-of-pocket healthcare expenses after Marla paid the first $480 of any such expenses, and 50 percent of childcare expenses incurred by Marla relating to her employment. The district court entered an order on March 21 approving the requested modifications.

A couple months later, on May 22, 2019, Marla filed an "Application for Order to Show Cause" in the Lancaster County District Court alleging Kevin owed $1,803.80 for childcare expenses incurred by Marla prior to the March 2019 modification.

## 3. JULY 2019 COMPLAINT TO MODIFY

A couple months after Marla filed her contempt action against Kevin for past-due childcare expenses, Kevin filed a "Complaint to Modify" with the Lancaster County District Court on July

18, 2019, claiming that a material change in circumstances had occurred warranting the modification of the decree and parenting plan. He alleged there had been a material change in circumstances in that Colten expressed the desire to live with Kevin in South Dakota, Marla relocated with Colten to Norfolk, Nebraska, and Marla's relocation to Norfolk brought Marla and Colten closer to Kevin's residence. Kevin later filed a motion for temporary orders, asking in part that he be granted temporary custody of Colten. The court denied Kevin's request for temporary custody, but modified the parenting plan to provide Kevin parenting time with Colten "on alternating weekends from Friday at 6:00 p.m. and ending on Sunday at 6:00 p.m. beginning August 16, 2019."

Trial took place on January 30 and February 12, 2020, at which time the parties offered witness testimony and other evidence to the district court. We set forth details of that evidence later in our analysis as pertinent to the issues on appeal. The court entered an "Order for Modification" on March 17. The court found that Kevin "failed to meet his burden of proof to show there is a material change in circumstances in support for his request for sole legal and physical custody." However, the court found a material change of circumstances in Marla's move to Norfolk, warranting modification of the parenting plan. The order provided that Marla would retain legal and physical custody of Colten subject to Kevin's parenting time. The court additionally modified the parenting plan and the parties' financial obligations. Kevin was provided parenting time with Colten "every other weekend from the day the child is released from school at 6:00 p.m. to the day before the child goes back to school at 6:00 p.m." and summer parenting time "[c]ommencing on the first Sunday following [Colten's] release from school for the summer until the Sunday immediately preceding the last week in July each year" subject to Marla's summer "parenting time of every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m." The parenting plan also set forth an alternating holiday parenting time schedule. Additionally, the court ordered Kevin to pay $450 per month in child support, 50 percent of childcare expenses incurred by Marla up to a monthly maximum of $500, and 50 percent of medical expenses incurred after Marla paid the first $480 per year for such expenses. Each party was to pay his or her own attorney fees and costs, as well as equally share in paying the attorney fees incurred by the attorney appointed by the court for Colten's benefit. Finally, the court indicated that Kevin had complied with the conditions of a purge plan entered by the court on October 4, 2019, and thus vacated its prior order to show cause.

Following the entry of the March 17, 2020, order, Kevin timely appealed.

### III. ASSIGNMENT OF ERROR

Kevin claims the district court abused its discretion in finding that he failed to prove a material change in circumstances warranting modification of custody and ordering that Marla would retain sole legal and physical custody of Colten subject to a modified parenting plan.

### IV. STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable

or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.* A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and just result. *Id.* In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## V. ANALYSIS

The district court determined that Kevin "failed to meet his burden of proof to show there is a material change in circumstances in support of his request for sole legal and physical custody." In other words, the court found the evidence insufficient to demonstrate a material change in circumstances since the entry of the previous custody order which affected Colten's best interests and which warranted a change in custody. We will first set forth the applicable legal principles, followed by the evidence from trial, and then explain why we find no abuse of discretion in the court's determination.

### 1. LEGAL PRINCIPLES

When deciding custody issues, the court's paramount concern is the child's best interests. *Lasu v. Lasu*, 28 Neb. App. 478, 944 N.W.2d 773 (2020). The foundation for the inquiry into the child's best interest lies in both statutory and case law. Neb. Rev. Stat. § 43-2923(6) (Reissue 2016) provides that in determining custody and parenting arrangements:

[T]he court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of . . . :

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child;

(d) Credible evidence of abuse inflicted on any family or household member . . . ; and

(e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

Other relevant considerations include stability in the child's routine, minimalization of contact and conflict between the parents, and the general nature and health of the individual child. *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020). No single factor is determinative, and different factors may weigh more heavily in the court's analysis, depending on the evidence presented in each case. *Id.*

Prior to the modification of a child custody order, two steps of proof must be taken by the party seeking the modification. First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. *Eric H. v. Ashley H.*, 302 Neb. 786, 925 N.W.2d 81 (2019). Next, the party seeking modification must prove that changing the child's custody is in the child's best interests.

*Id.* A material change in circumstances has been defined as the occurrence of something that, had it been known at the time the most recent custody order was entered, would have persuaded the court to decree differently. See *Jaeger v. Jaeger*, 307 Neb. 910, ___ N.W.2d ___ (2020). Circumstances having occurred before the most recent custody order are relevant only insofar as they bear on whether the change in circumstances since the most recent custody order are material and substantial. *Id*. Before custody is modified, it should be apparent that any material change in circumstances alleged will be permanent or continuous, not merely transitory or temporary. *Id*.

2. TRIAL TESTIMONY

At trial, Kevin and two other witnesses testified on Kevin's behalf, and Marla and two other witnesses testified on Marla's behalf. Colten also testified in chambers. We initially note the testimonies of the other witnesses called by Kevin and Marla primarily reflect and reinforce the parties' respective testimonies. We therefore focus primarily on the testimony given by Kevin and Marla for the purpose of our analysis.

(a) Kevin's Testimony

Kevin testified at trial regarding the relationships and history between himself, Marla, and Colten. He characterized his relationship with Colten positively, stating that he and Colten speak "[d]aily" when Colten is with Marla. He further stated that Colten "relaxes and becomes a kid" when with Kevin and his family. He affirmed that he has been supportive of Colten and has made substantial efforts to be present for Colten's athletic activities and major events such as Colten's religious confirmation. Kevin recounted that Colten has "expressed wishes to move up to South Dakota with [him and his] wife." Kevin believed that Colten began expressing this wish to move to South Dakota as early as 2017 and testified that Colten specifically communicated that wish to him before the district court's March 2019 modification order and again in June 2019. Kevin also acknowledged that Colten has changed his mind on at least one occasion since these expressions began.

Kevin attributed Colten's preference to the stress placed upon Colten by Marla, who Kevin claimed is "[a]t times" an unfit parent. He described Colten as "very guarded" and not "freely able to talk" when around his mother, especially after Colten told her in June 2019 that he wished to stay in South Dakota. Kevin testified that Marla, in response to Colten's preference to move in with his father, "[tore] his room apart, [threw] his stuff away," and "[w]hen he did it again this summer, she told him there were going to be repercussions." Kevin also noted issues communicating with Colten through Colten's cell phone and social media and said that Marla would often reply to his phone calls that Colten "can't talk to you tonight, he'll have to call you tomorrow." Such difficulties have also included Kevin being blocked on Colten's cell phone and social media, which he believed was due to Marla punishing Colten for "informing [Kevin] of too much stuff that goes on at [Marla's] house" and expressing his wish to live with his father.

Kevin also described additional complications to Colten's wellbeing created by Marla's acts and decisions as the custodial parent. In part, he highlights the five relocations and the six accompanying changes in schools that Colten has experienced throughout his childhood. Kevin expressed concern about the impact of the moves on Colten, as Kevin had "moved three times by the time [he] was in second grade, and [he] absolutely hated it." Additionally, Kevin said Marla

prevented him from taking Colten to the counselor that Colten began seeing during Marla's National Guard deployment in 2017, while living with Kevin, and restricted Kevin from making medical decisions for Colten unless there was an emergency.

Kevin also testified that since March 2019, Marla has failed to adhere to her obligations under the court's previous modification order and denied Kevin his parenting time with Colten. He said that Marla failed to inform him of her plan to move to Norfolk within 30 days of her relocation in July 2019. Further, he testified about instances when Marla has not allowed him to make up parenting time weekends that he had foregone due to conflicts with Colten's schedule or other issues preventing Colten from traveling. In light of these circumstances, Kevin believed that his having custody of Colten would be in Colten's best interests as it would offer Colten a stable home and school experience with Kevin and his family.

### (b) Marla's Testimony

Conversely, Marla testified that she and Colten have a positive relationship, describing it as "a pretty good relationship" and commenting that recently Colten had been "more open" when talking with her. She acknowledged that Colten expressed a desire to live with his father, but stated that she and Colten have "talked about [him moving to South Dakota] over the years, and he's always said he didn't want to live up there." She described Colten as tending to "flip-flop" on decisions and testified that he had changed his mind on his preference regarding where to live. Marla recounted that when she asked Colten for his preference the morning before the hearing on January 30, 2020, Colten confirmed that he wanted to stay in Norfolk. Although Marla admitted she "would be upset" at the prospect of Colten moving to South Dakota, she denied punishing Colten for expressing that he wished to live with his father.

Marla also offered testimony concerning the relationship between Colten and his father and stepmother. She noted that based on Colten subsequently becoming upset, Kevin "seems to get irate with Colten" during some phone calls. Marla observed that Colten sometimes becomes angry and upset with his father, and described times when Colten "didn't want to invite his dad to stuff at school" as a result. Colten had also reported becoming "scared" when his stepmother "lost her temper" during Colten's time with Kevin. Marla denied blocking Kevin on Colten's cell phone and social media and testified that Colten, when upset with his father, has "unfriended his dad, . . . gotten mad at his dad, . . . ripped stuff up that his dad's given him," and blocked his father's phone number.

Marla further highlighted how she has acted to Colten's benefit throughout his childhood. She described her decision to move to Norfolk as being made with Colten's best interests in mind, as Norfolk had a support network for both her and Colten. Further, her newfound employment with Aurora Cooperative offered her "flexibility" in that she worked away from home only "four to six days a month" and could adjust her schedule to accommodate events such as Colten's doctor appointments and parent-teacher conferences. She also testified that although Colten "was scared about the move, . . . he says he loves Norfolk." Marla felt Colten had settled in well in Norfolk as he had made friends and had become involved in activities in and out of school. Contrary to Kevin's testimony, Marla stated she found a counselor for Colten after some difficulty due to several counselors not wanting to take Colten as a client "because they don't want to be

subpoenaed for court." In light of her role as Colten's primary caregiver since his birth, she believed that it would be in Colten's best interests to remain in her custody.

### (c) Colten's Testimony

In addition to the evidence and testimony offered by the parties, Colten, age 11, testified in chambers with the trial judge and the attorneys present. The parties agreed that Colten's testimony would not be shared with either Kevin or Marla. Colten's testimony is sealed, and while we have reviewed and considered his testimony in our de novo review of the record, we will not recount it here.

### 3. NO ABUSE OF DISCRETION

Kevin claims the district court abused its discretion in finding that he failed to prove a material change in circumstances since the entry of the March 2019 modification order that warrants modification of Colten's custody. He contends the district court abused its discretion in allowing Marla to retain legal and physical custody of Colten. He emphasizes several factors as supporting the finding of a material change in circumstances, including Marla's relocation to Norfolk in July 2019, Colten's accompanying school transfer, Colten's wellbeing and relationships with his parents, and Colten's wishes to live with Kevin in South Dakota.

A material change in circumstances has been defined as the occurrence of something that, had it been known at the time the most recent custody order was entered, would have persuaded the court to decree differently. See *Jaeger v. Jaeger*, 307 Neb. 910, ___ N.W.2d ___ (2020). In the present matter, the last modification order preceding the present litigation was entered in March 2019. At that time, Colten's legal and physical custody remained with Marla. Kevin filed his complaint seeking modification just 4 months later; thus, the issue is whether a material change in circumstances occurred during that brief timeframe which affected Colten's best interests and which warranted a change in custody. See *Eric H. v. Ashley H.*, 302 Neb. 786, 925 N.W.2d 81 (2019) (since entry of previous custody order, party seeking modification must show material change in circumstance affecting best interests of child and prove changing custody is in child's best interests).

### (a) Relocation and New School

Marla's relocation to Norfolk and Colten's admission to a new school were circumstances that occurred following the March 2019 order. And while Marla's relocation within Nebraska to a city closer to Kevin's residence might qualify as a material change in circumstances, it cannot be said that the change adversely affected Colten in such a way as to make it in his best interests to change custody from Marla to Kevin. To the contrary, this was a beneficial relocation in terms of improving Kevin's access to his son. There was sufficient testimony to establish that Colten had adapted to his new residence and school, and therefore, the relocation to Norfolk and Colten's enrollment in a new school do not constitute a material change in circumstances affecting Colten's best interests in such a way that modifying custody was warranted.

### (b) Colten's Relationship With Each Parent and Preference

The primary points of contention related to changed circumstances and Colten's best interests appear to rest upon the parties' allegations regarding Colten's relationship with each

parent and Colten's various representations to his parents about where he wants to live. Our de novo review of the record reveals conflicting testimony and evidence concerning these matters.

*(i) Relationship With Parents*

We begin by noting the parties' respective characterizations of Colten's relationships with his parents. Kevin describes Colten's relationship with his mother as "strained." Brief for appellant at 22. As set forth above, Kevin's testimony attributed much of Colten's current stress and anxiety to Marla's words and actions, including her decision to relocate with Colten and her reactions to Colten's wish to move to South Dakota. He argues that Marla, as the custodial parent, "has consistently not put [Colten's] best interests first" and "caused undue stress upon Colten" by punishing him "for voicing his desire to reside with" his father. *Id.* at 17-18. He insists his own relationship with Colten is a "healthy, conversational model" wherein Colten does not experience the stress Kevin associates with Colten's relationship with Marla. *Id.* at 22.

Conversely, Marla contends there is "[n]o evidence . . . other than [Kevin's] opinion" that supports his description of a strained relationship between her and Colten. Brief for appellee at 11. Her testimony identified Kevin's relationship and interactions with Colten as a source of Colten's stress, indicated by instances when Colten was upset after phone calls or parenting time with his father. She also points to trial testimony evidencing that her relationship with Colten is "'normal' and 'positive'" despite Kevin's description. *Id.* at 11.

We note that Colten testified positively about his relationships with his mother and father.

*(ii) Colten's Preference on Where to Live*

We initially note that Kevin testified that Colten began expressing a wish to move to South Dakota as early as 2017 and that Colten specifically communicated that wish to him before the district court's March 2019 modification order and again in June 2019. Therefore, although Colten's alleged stated preference about where he wanted to live was not necessarily a change in circumstances since the entry of the March 2019 modification order, we nevertheless consider the testimony regarding the same in light of Colten's stated preference changing over the course of time or depending on his audience.

The parties' testimony revealed that Colten's preference concerning his custody had fluctuated between wanting to live with Kevin and wanting to live with Marla. Both parents acknowledged Colten had expressed his desire to live with Kevin on different occasions, including Colten's conversations with Kevin in March and June 2019 and his phone call with Marla in June 2019. However, Marla testified that Colten had told her he wished to continue living with her on other occasions, including after he returned to her residence following that same June 2019 phone call. Kevin and Marla each confirmed that Colten had changed his mind on the subject of custody throughout the events surrounding this case, but offered different explanations for Colten's fluctuating preference.

We note that this court has previously found that a district court did not abuse its discretion in finding a material change in circumstances where the court weighed heavily the minor child's preference to reside with the noncustodial father after being in his mother's custody for 11 years after the initial decree. See *Floerchinger v. Floerchinger*, 24 Neb. App. 120, 883 N.W.2d 419 (2016). However, while the preference of a mature, responsible, intelligent minor child regarding

his or her custody should be given consideration, it should not be controlling. See *Olson v. Olson*, 27 Neb. App. 869, 937 N.W.2d 260 (2019). See, also, *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). Further, a child's stated preference, alone, will not suffice to establish a material change in circumstances. See *Jaeger v. Jaeger, supra*. And in child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

### (c) Summary

Kevin and Marla both positively described their own relationships with Colten while emphasizing the negative impact of the other parent on Colten's wellbeing. We have also considered the testimony indicating that Colten has changed his mind concerning his preference on custody throughout the history of this case. The record further shows that both Kevin and Marla would be able to provide proper care and support to Colten as his custodial parent, and both parents agree on the importance of Colten maintaining his relationship with the other parent. Kevin points to his stable residence in South Dakota, and the social ties Colten has established during his time living with his father. In turn, Marla emphasizes her role as Colten's primary caregiver throughout his life and the support network she and Colten have in Norfolk.

Our review of the record shows that both Kevin and Marla care for and desire the best for Colten, despite their different visions of what that entails. Each parent has been involved in Colten's life and each has been supportive of his growth and endeavors through his tender years. However, we note a particularly apt observation offered by a witness that Colten is "torn between two enemies." The parties provided polarized and conflicting characterizations of the other parent and the role each plays in affecting Colten's wellbeing, and the record before us further emphasizes this conflict and Colten's difficult position of being caught between his mother and father. Certainly, Colten's best interests would be best advanced by Kevin and Marla coparenting in a positive, cooperative spirit that would enhance Colten's emotional stability, rather than parenting as "two enemies" in a legal battle with Colten caught in the middle.

In considering the parties' testimony and other evidence offered at trial, we cannot say the district court abused its discretion by finding that there had been no material change in circumstances affecting Colten's best interests which warranted a change in custody. Under the circumstances of this case where the record is conflicted as to material issues of fact, we give particular deference to the decisions of the trial judge who heard and observed the witnesses. See *Schrag v. Spear, supra* (in contested custody cases, where material issues of fact are in great dispute, standard of review and amount of deference granted to trial judge, who heard and observed witnesses testify, are often dispositive of whether trial court's determination is affirmed or reversed on appeal).

### VI. CONCLUSION

For the reasons set forth above, we affirm the district court's March 17, 2020, order.

AFFIRMED.